Shirley Sue ZEISLER, In the Interest of
Paula Paige Zeisler, a child, Appellant,

v.

Paul ZEISLER, Appellee.

No. 19156.

Court of Civil Appeals of Texas,
Dallas.

· April 12, 1977.

Rehearing Denied May 25, 1977.

928 ■

Bruce W. Bowman, Jr., Turner, Rodgers, Sailers, Jordan & Calloway, Dallas, for appellant.

Lawrence Fischman, Weil, Craig & Fischman, P. C., Dallas, for appellee.

GUITTARD, Chief Justice.

The question raised by this appeal is whether a nonresident father who has been ordered by a Texas divorce decree to make periodic payments for the support of his child is amenable to Texas process served outside the state in a suit by the mother to increase the payments, although none of the parties now resides in Texas. We hold that the father is amenable to suit in Texas and, accordingly, we reverse the trial court's dismissal of the action for want of jurisdiction.

The parties were formerly residents of Texas. The father left the mother and the child about three weeks after the child's birth. In 1971 the parties were divorced in Texas by a decree which gave the mother custody and ordered the father to make monthly payments for the support of the child to the Dallas County child support office. In 1972 the mother and child moved to Georgia, where they still reside. In 1972 or 1973 the father moved to Florida. He still resides there, but has continued to make his payments under the decree through the Dallas County child support office, which has transmitted them to the mother. In 1976 the mother brought this action in one of the domestic relations courts of Dallas County, alleging that the needs and expenses of the child have increased and that the father's income also has substantially increased.[1] Process was served personally on the father in Florida in accordance with Tex.R.Civ.P. 108.

The father made a special appearance and moved to dismiss the action for lack of jurisdiction over his person. The trial court heard the evidence on the motion to dismiss along with evidence on the merits. After the hearing, the judge made findings of fact in which he found that $400 was a reasonable amount for the father to pay each month for support of the child. However, the judge also found that the court had no jurisdiction, and he sustained the motion to dismiss.

On this appeal the mother contends that the trial court had jurisdiction under Tex. Family Code Ann. § 11.051 (Vernon Supp. 1976), which provides:

> In a suit affecting the parent-child relationship, the court may exercise personal jurisdiction over a person on whom service of citation is required or over the person's personal representative, al-

---

1. Appellant does not rely on the concept of continuing jurisdiction under Tex.Family Code Ann. § 11.05 (Vernon Supp.1976), since the divorce decree was issued before enactment of Title 2 of the Code in 1973.

though the person is not a resident or domiciliary of this state, if:

(1) the child was conceived in this state and the person on whom service is required is a parent or an alleged or probable father of the child;

(2) the child resides in this state, as defined by Section 11.04 of this code, as a result of the acts or directives or with the approval of the person on whom service is required;

(3) the person on whom service is required has resided with the child in this state; or

(4) notwithstanding Subdivisions (1), (2), or (3) above, there is any basis consistent with the constitutions of this state or the United States for the exercise of the personal jurisdiction.

Appellant contends that this statute is applicable since the child was conceived in Texas within subdivision (1), appellee lived with the child in Texas within subdivision (3), and appellee had a continuing duty under the divorce decree to make support payments in Texas within subdivision (4). Appellant recognizes that application of the statute is limited by the minimum-contacts requirement of due process, but argues that these facts are sufficient to establish minimum contacts. Appellee replies that minimum contacts are not established, since none of the parties has resided in Texas for several years and appellee has done no purposeful act giving rise to the claim in this state.

■ No case cited to us has dealt with a similar situation. The ultimate test of due process is that stated in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), that assumption of personal jurisdiction must not offend "traditional notions of fair play and substantial justice." This statement was qualified by the requirement in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) that there must be "some act by which the defendant purposefully [availed himself] of the privilege of conducting activities within the forum State, thus invoking benefits and protections of its laws." In *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966), the Supreme Court of Texas added another requirement to the effect that the cause of action must arise from the act or transaction in the state on which jurisdiction is based. The court also adopted a statement from *Tyee Construction Co. v. Dulien Steel Products, Inc.*, 62 Wash.2d 106, 381 P.2d 245, 251 (1963), amplifying the requirement of "traditional notions of fair play and substantial justice" by saying that consideration should be given to "the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation."

■ Within these guidelines, the concept of extraterritorial jurisdiction over the person has been pushed further in contract and tort cases than in domestic-relations litigation. In a contract case, an obligation to perform in the forum state appears to be sufficient when coupled with any other relevant contact, such as negotiation of the contract in the forum state or the mailing of a signed contract to the other party in the forum state. *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847 (5th Cir. 1966); *N. K. Parrish, Inc. v. Schrimscher*, 516 S.W.2d 956, 959 (Tex.Civ.App.—Amarillo 1974, no writ); *Pizza Inn, Inc. v. Lumar*, 513 S.W.2d 251, 254 (Tex.Civ.App.—Eastland 1974, writ ref'd n. r. e.); *National Truckers Service, Inc. v. Aero Systems, Inc.*, 480 S.W.2d 455, 459 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n. r. e). In tort cases an injury within the forum state from a defective product manufactured by the defendant has been held sufficient when coupled with other contacts of the manufacturer within the state, although the other contacts may have been unrelated to the

cause of action and even though the defective product was not brought into the forum state until after it had been in use elsewhere for many years. *Eyerly Aircraft Co. v. Killian,* 414 F.2d 591, 595 (5th Cir. 1969). Moreover, the occurrence of a tort within the forum state has been held sufficient, although neither plaintiff nor defendant had a residence or place of business there. *Elkhart Engineering Corp. v. Dornier Werke,* 343 F.2d 861 (5th Cir. 1965). On a quasi-tort theory, the minimum-contacts test for a paternity suit has been considered satisfied by conception of a child in the state where the mother lived. *State ex rel. Nelson v. Nelson,* 298 Minn. 438, 216 N.W.2d 140, 143 (1974).

Texas has applied the minimum contacts test in domestic relations cases in which foreign judgments for accrued alimony rendered in the states of last matrimonial domicile have been recognized as entitled to full faith and credit. *Mitchim v. Mitchim,* 518 S.W.2d 362, 367 (Tex.1975); *Fox v. Fox,* 526 S.W.2d 180, 183 (Tex.Civ.App.—Dallas 1975, no writ). In each of these cases, however, the forum state was considered to have a strong interest in providing for the support of the former wife, who continued to live there.

▬▬ In the present case we are faced with the question whether the removal of the mother and child to Georgia leaves Texas with no interest in providing adequate support for the child and, therefore, requires appellant to pursue her claim for increased child support wherever appellee may be found. After reviewing the authorities, we hold that the minimum-contacts test is satisfied notwithstanding the present nonresidence of appellant and her child. The *Hanson v. Denckla* requirement of purposeful activity in the state is satisfied by the father's relationship with appellant in Texas, the state of last matrimonial domicile. The *O'Brien* requirement that the cause of action must arise out of that activi-

ty is satisfied also, since the father's obligation to support the child arose from his relationship with the mother in Texas. Application of "traditional notions of fair play and substantial justice," as amplified in *O'Brien,* involves broad evaluation of "the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the *basic equities of the situation* [emphasis added]." We conclude that such an evaluation, likewise, supports the assumption of personal jurisdiction. Recognition of the factor of "relative convenience of the parties," does not in our opinion imply adoption of *forum non conveniens* as a constitutional doctrine in this kind of case, although the convenience of the forum for all parties may be a factor favoring personal jurisdiction. Thus, in *Mitchim,* the supreme court, after considering the recency of defendant's residence in the forum state, the relative convenience of the parties in litigating in one state or the other, and the relative availability of evidence in each state, concluded that the case fell within the constitutional limits of personal jurisdiction. The present case, admittedly, is not so strong because of appellee's longer absence from the state and also because the mother and child are no longer residents of Texas. Considerations of convenience cannot be cited to support assumption of personal jurisdiction here, but, on the other hand, no other forum is shown to be more convenient for both parties. Moreover, since Texas is the state of last matrimonial domicile, no other state has both a superior interest and clear authority to enforce appellee's obligation to support his child.[2] Georgia, where appellant and the child now live, would have an interest in providing for the child's support, but, so far as this record shows, appellee has engaged in no significant activities there, and we are

---

2. Section 11.051 would appear by its terms to apply even though the parties have subsequent-

ly resided together in another state, but we need not consider whether the due-process lim-

not in a position to decide whether appellee's undoubted obligation to support the child, without other contacts, would be enough for extraterritorial jurisdiction in that state. Since appellee's obligation to support the child arose in Texas and until now has been regulated and defined by a Texas decree ordering him to make payments in Texas, we conclude that requiring him to respond in Texas to a suit to increase the amount of those payments does not offend "traditional notions of fair play and substantial justice." [3]

This conclusion is consistent with the decisions above cited in both contract and tort cases. We see no reason why an action to determine and enforce a parent's obligation to support his child should encounter greater obstacles with respect to jurisdiction than an obligation arising from contract or tort. Denial of jurisdiction would encourage the noncustodial parent to avoid obligations for support of children by moving to a different state where the custodial parent might encounter practical difficulties in pursuing remedies to require adequate support. These difficulties may exist even though the custodial parent and the child have also moved to another state. We conclude that the "basic equities of the situation" require that for this purpose the noncustodial parent should be subject to continuing personal jurisdiction of the state of last matrimonial domicile, at least as long as a currently enforceable order of that state requires support payments to be made there.

■ Although considerations of convenience must be weighed along with other factors, as in *Mitchim*, we do not understand that inconvenience of the forum is, in itself, a constitutional obstacle if the re-

quirements of due process are otherwise satisfied. A persuasive argument may be made for application of *forum non conveniens* in litigation between separated and divorced parents,[4] but we need not decide whether the trial court had discretion to dismiss the action under that doctrine, since appellant has made no attempt to invoke it in this case. For discussion of that doctrine, see *Flaiz v. Moore*, 359 S.W.2d 872 (Tex.1962) and *Cole v. Lee*, 435 S.W.2d 283 (Tex.Civ.App.—Dallas 1968, writ dism'd).

For the reasons stated, we hold that the judge erred in dismissing the cause for lack of jurisdiction over the person of appellee. The record shows, however, that the judge did not dismiss the action until after he had heard the evidence and had found that a reasonable amount for appellee to pay for support of his child is $400 per month. Appellee does not challenge that finding on this appeal by cross-point or otherwise. Our duty under Tex.R.Civ.P. 434 is to render the judgment which the trial court should have rendered. Therefore, we reverse the judgment of the trial court and render judgment increasing the amount of monthly payments from $200 to $400, effective on the first day of October, 1976, the first month following the trial court's order.

Reversed and rendered.

## ON MOTION FOR REHEARING

■ In his motion for rehearing appellee contends that we erred in rendering judgment for appellant rather than remanding for a new trial because the hearing on the merits was a nullity, as were also the

itation would permit the assumption of extraterritorial jurisdiction in that situation. For a discussion of the scope of § 11.051 in this context, see Sampson, *Long Arm Jurisdiction Marries the Texas Family Code*, 38 Tex.B.J. 1023, 1028, and footnote 37.

3. This holding should not be interpreted as supporting litigation of conservatorship issues in a state where neither the child nor the custodial parent resides, since that question may involve

different considerations. On this point also, see *Sampson, supra,* at 1031, *and cf., Clayton v. Newton,* 524 S.W.2d 368, 372 (Tex.Civ.App.— Fort Worth 1975, no writ) (Oklahoma divorce court lacked jurisdiction to relitigate custody after custodian and child had become residents of Texas).

4. *Sampson, supra,* at 1031.

court's findings and conclusions, since the cause was dismissed for want of jurisdiction. We do not agree that the hearing or the findings were ineffective.

The record shows that the trial court did not observe section 2 of rule 120a, Texas Rules of Civil Procedure, which provides: "Any motion to the jurisdiction . . . shall be heard and determined before a plea of privilege or any other plea or pleading may be heard." After a conference in chambers and before proceeding with the hearing, the judge announced that the court would first take up the special-appearance plea of lack of jurisdiction and would "withhold its ruling in connection with that matter and go ahead and hear the evidence with reference to the motion for modification of support." No objection to this procedure was offered by appellee. Counsel for appellee presented evidence in support of his plea to the jurisdiction and called both appellant and appellee as witnesses. After both parties announced that they had no further evidence on the plea, the judge directed counsel for appellant to proceed on his motion for additional child support. Again counsel for appellee made no objection, and he cross-examined witnesses called by appellant.

On the merits, appellant testified concerning the child's needs and the increased expenses of caring for her. She asked for an increase in the payments from $300 to $600 per month. Appellee, called as a witness by appellant, testified that he was making $21,000 a year as an airline pilot in 1971 and that in 1975 his income from all sources had increased to $45,000. He anticipated making at least that much in 1976. He had an itemized list of his monthly income and expenses, which was offered in evidence. He testified that he owned a new $14,000 Cadillac automobile on which he was making payments and also owned an airplane and an interest in a hunting and fishing venture in Alaska. Appellant's counsel testified on his claim for attorney's fee. Appellee's counsel cross-examined and called appellant to the stand for testimony that she had money to pay her attorney.

After close of all the evidence, the judge heard arguments on the jurisdiction question as well as on the merits. He then announced that he would make his decision later in the week.

There is no record of the actual pronouncement of the judge's decision except his order dismissing the cause on September 29, 1976, and his findings and conclusions, dated October 4, 1976, to the effect that the parties did not have such "recent minimal contacts" as to meet the due-process requirement of in-personam jurisdiction. On October 11 he made additional findings to the effect that the circumstances of the child and of appellee had materially and substantially changed since the entry of the decree providing for support in amount of $300 per month and that appellee "should be required to pay the sum of $400 per month for the support of Paula Paige Zeisler."

In this state of the record we see no reason for another hearing to determine the amount of the support payments. The trial judge apparently recognized that the plea to the jurisdiction raised a legal question of some difficulty, and, accordingly, he proceeded to hear the evidence on both matters at the same hearing, apparently for the convenience of the parties, both of whom had come from other states. If appellee had objected to this procedure, the judge would have been required under rule 120a to rule on the plea to the jurisdiction before hearing evidence on the merits, and if he had proceeded over appellee's objection, a different question would now be presented. No such objection was made. Appellee, therefore, must be presumed to have consented to this procedure, which was calculated to serve his convenience as well as appellant's because it would obviate another trip to Dallas in the event the plea to the jurisdiction should be overruled, either by the trial court or on appeal.

The trial court's fact findings concerning the amount of support appear entirely rea-

sonable under the evidence in this record. Appellee has presented no cross-point attacking these findings, although appellant prayed in her brief for rendition of judgment "declaring child support in the amount of $400." Even now, he does not attack them for lack of evidence. If we should remand the case to the trial court with instructions that the judge should review the evidence he has already heard and make new findings, we would have no reason to believe that the new findings would be different. Appellee does not suggest that additional evidence would be available that might be expected to change the result. Appellee's sole contention is that since the trial court ultimately dismissed the cause for lack of jurisdiction, even though that dismissal is now determined to be erroneous, the hearing on the merits and the fact findings are now "nullities." We conclude that the law does not require an empty formality unrelated to the merits of the action and manifestly contrary to the interests and convenience of all parties.

Appellee relies on *Touchy v. Houston Legal Foundation*, 432 S.W.2d 690, 691 (Tex. 1968), in which the defendant filed both a plea in abatement on the ground that the plaintiffs had no standing to sue and a motion for summary judgment on that ground and others. The trial court heard both at the same hearing and entered an order granting both. The supreme court observed that after sustaining the plea in abatement and dismissing the suit, the court's action in granting the summary judgment was meaningless, and, consequently, the only question on appeal was whether the plea in abatement was properly sustained. We do not regard that case as controlling here because in this case the trial court did not, as in *Touchy*, enter an order granting two inconsistent remedies. The court dismissed the case for want of jurisdiction of the person, but nevertheless, having heard the evidence presented by both parties on the merits, without objection, made fact findings for the benefit of the parties and the appellate court in the event the order of dismissal should be held

improper. We conclude that this was an appropriate exercise of the court's fact-finding function.

Our attention has been called to the fact that our judgment purports to raise the payments from $200 to $400 per month, rather than from $300 to $400 per month. This correction is now made, although it does not change the effect of the judgment.

Motion for rehearing overruled.