Beverly CROCKETT, Appellant,

v.

Donald CROCKETT, Appellee.

No. 19846.

Court of Civil Appeals of Texas, Dallas.

Oct. 3, 1979.

Rehearing Denied Nov. 1, 1979.

Christopher M. Weil, J. Kathryn Lindauer, Weil, Craig & Fischman, Dallas, for appellant.

Jay S. Fichtner, Nanch Fisher Fellman, Berman, Fichtner & Mitchell, Dallas, for appellee.

Before AKIN, ROBERTSON and CARVER, JJ.

ROBERTSON, Justice.

Appellant Beverly Crockett sued appellee Donald Crockett for arrearages in child support ordered by an Ohio court in its decree of divorce. She also sought to have appellee found in contempt of the Ohio order and to modify the Ohio decree with respect to

child support and visitation rights. Appellee filed a special appearance under Tex.R. Civ.P. 120a on the ground that the Ohio court has continuing jurisdiction over the suit and that jurisdiction could not be exercised because sufficient contacts with Texas for due process purposes were lacking. The trial court sustained the special appearance and dismissed the case. We reverse and remand on the grounds that service upon the appellee falls within the ambit of the Texas Family Code's long-arm statute for suits affecting the parent-child relationship and that maintenance of suit in Texas does not violate due process. Additionally, we hold that continuing jurisdiction under the Texas Family Code does not apply to foreign courts.

Beverly Crockett, appellant, and Donald Crockett, appellee, were married in Dallas, Texas, in 1963; they remained in Dallas until 1966, and their two children were both conceived and born in Dallas. They later moved to Austin, Texas, and then to Ohio. In 1974 when the parties returned to Texas for a visit, appellee announced that he wanted a divorce. Appellant and the children remained in Texas[1] while appellee returned to Ohio where he instituted divorce proceedings. The Ohio court rendered a final judgment of divorce setting out the respective parties' custody, child support, and visitation rights. In 1977 appellee filed suit in Ohio for the purpose of adjusting the support payments and visitation rights. After appellant was served in Texas with process in the Ohio suit, appellee ceased making child support payments. Appellant specially appeared in Ohio for the purpose of contesting jurisdiction. In September 1978 the Ohio court overruled appellant's special appearance holding that it had jurisdiction over her. Following the initiation of the Ohio proceeding, appellant filed suit in Dallas to hold appellee in contempt of the Ohio decree, to recover alleged arrearages in child support, and to modify the provisions of the decree relating to child support and visitation rights. Appellee

then filed his special appearance under Tex. R.Civ.P. 120a which the trial court sustained.

We first address the question of whether the Texas court has jurisdiction over the nonresident appellee so that he is amenable to process issued by that court. In *Mitchim v. Mitchim*, 518 S.W.2d 362 (Tex.1975) the Texas Supreme Court adopted a two-pronged test for exercising jurisdiction over a nonresident. First, a statute of the support ordering state must authorize the acquisition of such jurisdiction in the manner used, and second, sufficient contacts between the defendant and the forum relevant to the cause of action must exist to satisfy "traditional notions of fair play and substantial justice." 518 S.W.2d at 366. This test has been accepted by other Texas courts. *See Scott v. Scott*, 554 S.W.2d 274, 279 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Hilt v. Kirkpatrick*, 538 S.W.2d 849, 851 (Tex.Civ.App.—Waco 1976, no writ).

Clearly, the first requirement of the test is met by Tex.Fam.Code Ann. § 11.051 (Vernon Supp.1978–1979). This "long-arm statute" provides as follows:

In a suit affecting the parent-child relationship, the court may exercise personal jurisdiction over a person on whom service of citation is required or over the person's personal representative, although the person is not a resident or domiciliary of this state if:

(1) the child was conceived in this state and the person on whom service is required is a parent or an alleged or probable father of the child;

(2) the child resides in this state, as defined by section 11.04 of this code, as a result of the acts or directives or with the approval of the person on whom service is required;

(3) the person on whom service is required has resided with the child in this state; or

---

1. Appellant claims that she remained in Texas at the direction of appellee. Appellee has denied this claim.

(4) notwithstanding subdivisions (1), (2), or (3) above, there is any basis consistent with the constitutions of this state or the United States for the exercise of the personal jurisdiction.

The second prong of the *Mitchim* test derives from the United States Supreme Court's holding that even though a state may exercise jurisdiction over a cause, the assumption of personal jurisdiction over a nonresident defendant must not offend that defendant's due process rights. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). The test established in *International Shoe* was qualified by *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), which requires that there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Id.* at 253, 78 S.Ct. at 1239–40, 2 L.Ed.2d at 1298. Additionally, the Texas Supreme Court has held that the cause of action sued upon must arise from the act or transaction in the forum state. *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966).

In *O'Brien* the Texas Supreme Court adopted a statement made by the Supreme Court of Washington in the case of *Tyee Construction Co. v. Dulien Steel Products, Inc.*, 62 Wash.2d 106, 381 P.2d 245 (1963) that consideration should be given to "the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." 381 P.2d at 251. Because of the vagueness of the constitutional standard, each case must turn on an analysis of its particular facts. *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 764 (Tex.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978).

In support of her position that there are sufficient minimum contacts to satisfy *Mitchim's* second requirement, appellant relies primarily on the case of *Zeisler v. Zeis-*

*ler*, 553 S.W.2d 927 (Tex.Civ.App.—Dallas 1977, writ dism'd). In *Zeisler*, a support modification case, this court was asked to exercise jurisdiction in a situation where both the father and the mother were nonresidents. We held that Texas could properly entertain the suit because the parties had been married in Texas, the child for whom support was sought was conceived and born in Texas, and Texas was the state of the last matrimonial domicile. This court also said that inconvenience of the forum was not, in and of itself, a constitutional obstacle to the assumption of personal jurisdiction over a nonresident if the requirements of due process are otherwise met.

Appellee, on the other hand, relies on the case of *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). In *Kulko* the issue was whether in a modification of support case, a California court could exercise *in personam* jurisdiction over the nonresident parent of minor children domiciled within the state. The parties, both of whom were New York domiciliaries, were married in California in 1959 while the husband was there briefly en route to overseas military duty. Immediately thereafter the wife returned to New York, as did the husband following his military service. Their two children were born in New York and the parties lived in that state as a family continuously until 1972 when they separated, at which time the wife moved to California. A written separation agreement was negotiated, finalized, and signed in New York. The agreement specified that the children were to remain with the father during most of the year and spend vacations with their mother; the father was to pay $3,000 a year as child support to the mother for those brief periods during which the children were with her. Shortly thereafter the wife procured a decree of divorce in Haiti that incorporated the terms of the separation agreement. In 1973 the parties' daughter expressed a desire to live in California with her mother; her father acquired and purchased the one-way airplane ticket for her. In 1976 the parties' son, without his father's knowledge

or permission, flew to California where he took up residence with his mother and sister. The mother then filed suit in California in an effort to establish the Haitian divorce decree as a California judgment, to increase child support since she was now caring for both children most of the year, and to modify the custody provisions of the judgment. The father challenged on the grounds that he was not a resident of California and that he lacked sufficient "minimum contacts" with the state under the requisites of *International Shoe*. The California courts found that it was both "fair and reasonable" for the defendant to be subject to personal jurisdiction in the state because the father had purposely availed himself of the benefits and protections of the laws of the state by sending his daughter to live with her mother and consented to the residence of his son in California. The United States Supreme Court reversed, holding that the exercise of *in personam* jurisdiction by the California courts over appellant would violate the due process clause of the fourteenth amendment. Specifically, the court held that (1) the acquiescence of the father in his daughter's desire to live with her mother in California did not confer jurisdiction on the courts of that state in the mother's action for increased support or custody; (2) the exercise of *in personam* jurisdiction was not warranted because the father derived no financial benefit as a result of his acquiescence in his daughter's desire to live in California with her mother; and (3) basic considerations of fairness pointed to New York as a proper forum for the adjudication of the mother's action. The court did recognize that California has an interest in protecting resident children and in facilitating child support actions on behalf of those children. The court went on, however, to hold that these interests did not make California a "fair forum" in which to require the father, who derived no personal or commercial benefits from his children's presence in California and who lacked other "minimum contacts" with the state, either to defend a child-support suit or to suffer liability by default. 436 U.S. at 100, 98 S.Ct. at 1701, 56 L.Ed.2d at 146.

We conclude that *Kulko* is not controlling here since at the time suit was brought in *Kulko*, California could not have obtained personal jurisdiction over the defendant because, unlike Texas, California had no special long-arm statute. Indeed, the Supreme Court specifically noted this fact. *Kulko* is not only distinguishable on this ground, but also on its facts. Distinctions showing a lack of due process minimum contacts included neither child being born in California, the father having never resided with his children in California, the parties having never lived together as man and wife in California, and the father having never traveled to California to visit his family.

In this case there are sufficient minimum contacts to satisfy "traditional notions of fair play and substantial justice," and thus the second requirement of *Mitchim* is met. These contacts are as follows:

(1) the parties were married in Texas;

(2) the parties lived for several years as man and wife in Texas;

(3) both children were conceived in Texas;

(4) both children were born in Texas;

(5) the respondent resided with the children in Texas;

(6) the children, as well as the petitioner, continued to live in Texas after the divorce;

(7) the respondent has come to Texas to visit the children;

(8) section 11.051 provides for "long-arm" jurisdiction to the fullest extent of the limits of due process.

Additionally, the children are Texas residents and Texas has a strong interest in seeing that they are supported without resort to public funds. We conclude under these facts that appellee was amenable to process issued by the Texas court.

Appellee's motion for special appearance included another reason for contending Texas lacked jurisdiction which, though not proper for a special appearance because it concerns jurisdiction of the subject mat-

ter rather than whether defendant is "amenable to process issued by the courts of this State" under Rule 120a, may be raised again, and consequently we address it here.[2] Appellee claims that the Ohio court which rendered the divorce decree has continuing and exclusive jurisdiction over all suits relating to the parent-child relationship, including modification of support and visitation. On the other hand, appellant argues that "continuing jurisdiction," as defined in section 11.05 of the Texas Family Code, relates only to Texas courts and has no extraterritorial effect. Subsection (a) of this provision reads as follows:

Except as provided in Subsections (b), (c) and (d) of this section, *when a court acquires jurisdiction of a suit affecting the parent-child relationship, that court retains continuing jurisdiction of all matters provided for under this subtitle in connection with the child,* and no other court has jurisdiction of a suit affecting the parent-child relationship with regard to that child *except on transfer as provided in Section 11.06 of this code.*

Tex.Fam.Code Ann. § 11.05(a) (Vernon Supp.1978–1979) (emphasis added).

We conclude and hold that section 11.-05(a), when it mentions "continuing jurisdiction," refers only to courts within the State of Texas and has no extraterritorial application. This is true because in viewing the Texas Family Code in its entirety we find other sections which delineate the procedures to be followed to enforce foreign support orders and foreign custody orders. For example, Subtitle B, entitled "Uniform Acts and Interstate Compacts," deals specifically with foreign court judgments and orders in child support matters. Chapter 21 of this subtitle, known as the Uniform Reciprocal Enforcement of Support Act, specifies in detail how foreign support orders are enforced in Texas. If appellee's contentions were correct, these sections of the Family Code would be rendered meaningless because only the foreign court would

have continuing jurisdiction to the exclusion of all Texas courts.

Our holding is also supported by provisions of the Family Code, prior to its amendment in 1977, pertaining to habeas corpus. Section 14.10, which was enacted at the same time as section 11.05, provided that habeas corpus would be ordered and a cross-action for modification would be disregarded if a custody order was entered "by a court of another state or nation" which had jurisdiction over the parties, *provided the child had been within the state for less than twelve months immediately preceding the filing of the petition for the writ.* Obviously, under this provision a foreign court could have lost jurisdiction for habeas corpus purposes if the children had remained in Texas for a period longer than twelve months. This shows, at the time section 11.05 was enacted, a legislative intent to limit the concept of "continuing jurisdiction" to Texas courts. To say that under the preamended version of section 14.10 that a foreign court had continuing jurisdiction with respect to all matters relating to a child, except the question of who is entitled to custody if the child had been in Texas longer than twelve months, would reach an absurd result. Indeed, as here, it would place an intolerable burden on children to require their custodial parent to return to a distant state to obtain child support.

Further examples of sections supporting our conclusion include sections 11.06 and 11.071. Section 11.06 provides, in the proper circumstances, for the transfer of proceedings from courts with continuing jurisdiction to a court in "the county where venue is proper," Tex.Fam.Code Ann. § 11.-06(a) & (b) (Vernon 1975), "to the court where the suit for dissolution of the marriage is pending," *id.* § 11.06(b), or "to the court which has acquired jurisdiction under Section 11.05(c) . . .," *id.* § 11.06(d). Under these provisions, giving extraterritorial effect to the term "continuing jurisdic-

---

2. We do not pass on the question of whether by appellee's assertion of continuing jurisdiction in the Ohio court he waived his special appearance and made a general appearance since ap-

pellant has not raised that question on this appeal. *Fox v. Fox,* 559 S.W.2d 407, 408–09 (Tex.Civ.App.—Austin 1977, no writ).

tion" would require Texas courts to transfer suits, in the proper circumstances, to courts in other states. It is unlikely that such an unworkable system was intended by the legislature.

Furthermore, section 11.071 provides the procedure by which a court of continuing jurisdiction is to be identified. The petitioner or the court is to request from the State Department of Public Welfare (now the Texas Department of Human Resources) the identification of the court of continuing jurisdiction if a question exists whether any court has continuing jurisdiction. Obviously, the legislature did not expect the State Department of Public Welfare to maintain records on out-of-state courts having jurisdiction over every child that comes into Texas or every child that might be the subject of a suit in Texas affecting the parent-child relationship. It is ridiculous to assume that the legislature would have enacted a system which would require the courts to perform these useless acts. Thus, the only reasonable context in which the term "continuing jurisdiction" can be read is as applying exclusively to Texas courts.

In so holding we expressly disagree with *Brown v. Brown*, 555 S.W.2d 784 (Tex.Civ. App.—El Paso 1977, no writ) and *Follack v. Brown*, 530 S.W.2d 882 (Tex.Civ.App.— Beaumont 1975, writ ref'd n. r. e.) insofar as they hold that section 11.05(a) of the Texas Family Code was to be given extraterritorial effect. In *Follack* the court relied upon two pre-Family Code cases which recognized that out-of-state courts had continuing jurisdiction over Texas residents *when those same courts had originally adjudicated suits affecting the parent-child relationship. Id.* at 884; *see Bull v. Wilson*, 362 S.W.2d 662, 664 n.1 (Tex.Civ.App.—San Antonio 1962, no writ); *Dowden v. Fischer*, 338 S.W.2d 534, 537 (Tex.Civ.App.—Waco 1960, no writ). These cases do not support the holding in *Follack*. *Bull* did not address the question of whether Texas courts may exercise jurisdiction over a parent-child relationship simultaneously with another state. Indeed, the Waco Court of Civil Appeals in *Dowden* specifically noted that a

prior judgment of an out-of-state court, retaining continuing jurisdiction, does not bar subsequent proceedings in Texas. *Dowden v. Fischer*, 338 S.W.2d at 536–37.

We agree with Justice Keith's concurring opinion in *Follack* stating that the concept of continuing jurisdiction had "no bearing on the decision" in *Follack*. Rather, that decision properly turned on whether the out-of-state court had jurisdiction over the Texas resident and whether full faith and credit was to be given the South Carolina judgment by the Texas court. *Follack v. Brown*, 530 S.W.2d at 885. The subsequent decision of *Brown v. Brown* cited *Follack*, without further analysis, for the erroneous proposition that section 11.05 of the Texas Family Code is extraterritorial in scope. *Brown v. Brown*, 555 S.W.2d at 787. Consequently, we do not regard *Brown v. Brown* or *Follack v. Brown* as correct in giving extraterritorial effect to section 11.05.

Accordingly, we hold that the trial court erred in sustaining appellee's special appearance. Consequently, we reverse and remand for trial.