**AFFIRM; and Opinion Filed August 23, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-15-00439-CV
_____

### IN THE INTEREST OF E.H.G, A CHILD

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-54301-2013**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and O'Neill[1]
Opinion by Justice O'Neill

Appellant appeals the trial court's June 20, 2014 order on appellant's special appearance challenging personal jurisdiction, the June 30, 2014 order denying appellant's motion to dismiss, and the January 27, 2015 order establishing the parent-child relationship. In three issues, appellant contends that the trial court (1) did not have personal jurisdiction over appellant; (2) erred in denying appellant's motion to dismiss based on his status as a presumed father to the child; and (3) erred in considering appellant's wife's resources in calculating appellant's child support obligation. We affirm the judgment of the trial court.

## Background

The attorney general brought the underlying suit to establish parentage and to obtain child support. Although the child who is the subject of this case was born in Tennessee, she has

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

lived in Texas since four or five months after her birth. Appellant and the child's mother were never married. At the hearing on the special appearance, the child's mother testified she met appellant in 1995 in Irving, Texas. They dated and lived together in Irving and then moved to Humble, Texas, where they lived until March or April of 1997. Although the child was conceived while the couple was living in Texas, before the child's birth the couple moved to Tennessee to pursue a better employment opportunity for appellant, "but after about four to five months, that didn't work out." The child was born in Tennessee during the four or five months the couple lived in Tennessee.

The mother, appellant and the child moved back to Texas and lived together as a family in Texas until February 1999. During that time, and for some time afterward, appellant worked in Texas. The mother lost contact with appellant at the end of 1999 or 2000, but learned later from appellant's grandparents that he was in prison in Tennessee for armed robbery. Despite the fact that E.H.G. remained in Texas, which has been her home for the vast majority of her life, appellant's petition states he severed all ties with Texas when he "permanently returned" to Tennessee in 2001. According to the child's mother, appellant was released from prison in 2008 and at that time began, of his own accord, sending support checks to Texas, but stopped sending support checks in September 2014. Appellant visited the child in Texas once in 2010 or 2012 for a weekend and took her shopping. He also has attempted to maintain email contact with the child and has sent cards and birthday presents. Appellant characterizes the child as unresponsive to these attempts to maintain contact and argues he has "no relationship" with the child. There is no dispute that appellant presently resides in Tennessee, does business only in the state of Tennessee, and is not presently involved in decision making concerning the child.

**Discussion**

**A. Special Appearance**

In his first issue, appellant contends the trial court erred in issuing its June 20, 2014 order when the trial court did not have personal jurisdiction over appellant. We disagree.

**i. Standard of Review**

A special appearance is used to challenge the trial court's jurisdiction over the person or property based on a claim that neither is amenable to process in this state. TEX. R. CIV. P. 120a. The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident within the provisions of the long-arm statute. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). The non-resident has the burden to negate all forms of personal jurisdiction claimed by the plaintiff. *Id.* at 793.

Whether a court can exercise jurisdiction over a nonresident is a question of law. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). The exercise of personal jurisdiction requires the trial court to resolve any factual disputes before applying the jurisdictional formula. *Am. Type Culture Collection, Inc., v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002). On appeal, the appropriate standard of review for a trial court's order granting or denying a special appearance is de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Once all factual disputes are resolved, we examine de novo whether the facts negate all bases for personal jurisdiction. *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806.

**ii. Analysis**

A defendant challenging a Texas court's personal jurisdiction must negate all jurisdictional bases. *BMC Software Belgium, N.V*, 83 S.W.3d at 793 (citing *Kawasaki Steel Corp.*

*v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985)). The long arm statute in the family code sets forth the circumstances under which a Texas trial court may exercise personal jurisdiction:

> (a) In a proceeding to establish or enforce a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>
> (1) the individual is personally served with citation in this state;
>
> (2) the individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
>
> (3) the individual resided with the child in this state;
>
> (4) the individual resided in this state and provided prenatal expenses or support for the child;
>
> (5) the child resides in this state as a result of the acts or directives of the individual;
>
> (6) the individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;
>
> (7) the individual asserted parentage in the paternity registry maintained in this state by the bureau of vital statistics; or
>
> (8) there is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

TEX. FAM. CODE ANN. § 159.201 (West 2014); *see also* TEX. FAM. CODE ANN. § 102.011 (West 2014). Because basic minimum contacts between a nonresident defendant and the forum state are essential to the constitutional exercise of personal jurisdiction over a nonresident defendant, Texas courts read the long-arm provisions of the family code as implicitly requiring the existence of such basic minimum contacts with Texas by the nonresident parent in addition to the specific circumstances set forth in the statute. *Bergdoll v. Whitley*, 598 S.W.2d 932, 934-35 (Tex. Civ. App.—Austin 1980, no writ) (construing former family code § 11.051, now § 102.011).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134

–4–

S. Ct. 1115, 1121 (2014). The focus in determining whether personal jurisdiction exists is on the contacts created by the actions of the party sued rather than contacts created by the person bringing suit. *Id*; *see, e.g.*, *Kulko v. Superior Court*, 436 U.S. 84, 94 (1978) (acquiescence of father in daughter's desire to live with mother in California did not confer personal jurisdiction on California courts); *Bergdoll*, 598 S.W.2d at 935 (fact that father married mother in Texas and children lived in Texas at time of suit not sufficient to establish minimum contacts where father had always lived in Tennessee). "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 134 S. Ct. at 1122.

In *Zeisler v. Zeisler*, 553 S.W.2d 927, 930-31 (Tex. Civ. App.—Dallas 1977, writ dism'd) this Court found sufficient minimum contacts to justify the exercise of personal jurisdiction where the parties married in Texas, the child was conceived and born in Texas and Texas was the last marital domicile of the parents. *Zeisler v. Zeisler*, 553 S.W.2d 927, 930–31 (Tex. Civ. App.—Dallas 1977, writ dism'd). It noted that the father's relationship with the mother constituted purposeful activity in Texas and the father's obligation to support the child arose out of that relationship with the mother. *Id.* For that reason, the Court concluded requiring the father to respond in Texas to a suit to increase the amount of his child support payments did not offend traditional notions of fair play and substantial justice. *Id.* It noted, "Denial of jurisdiction would encourage the noncustodial parent to avoid obligations for support of children by moving to a different state where the custodial parent might encounter practical difficulties in pursuing remedies to require adequate support." *Id.*

Here we conclude Gunn's suit-related conduct gave rise to sufficient minimum contacts with the state of Texas so as not to offend traditional notions of fair play and substantial justice. The record before the trial court showed that Gunn engaged in sexual intercourse in Texas and

the child was conceived in Texas. Gunn's obligation to support the child thus arose directly from those activities in Texas. Gunn and the child's mother lived together in Texas before the child was born and Gunn worked in Texas to help support the family while the child's mother was pregnant. The child returned to Texas as an infant from Tennessee with Gunn and the child's mother because Gunn's employment in Tennessee "didn't work out" and Gunn obtained another job in Texas at that time. Thus, the child's presence in Texas is a result of Gunn's decision to return to Texas as a family after their brief residence in Tennessee. Gunn has visited the child in Texas once, has sent support payments to the mother in Texas for the benefit of the child for six years, and has attempted to maintain contact with the child in Texas for the last six years since his release from prison.

This is not a case in which the unilateral actions of the mother resulted in the presence of the child in the state. *See, e.g., Cunningham v. Cunningham*, 719 S.W.2d 224, 228 (Tex. App.—Dallas 1986, writ dism'd) (where both parents had left Texas and established a new domicile in North Carolina, mother's unilateral removal of child to Texas without father's approval was not sufficient to establish any basis meeting requirements of due process whereby Texas courts could have jurisdiction over father). Instead, Gunn by his own purposeful activity in Texas has subjected himself to suit in Texas for purposes of establishing his child support obligation. His extended physical presence in Tennessee does not diminish those contacts with Texas that gave rise to the suit for child support. The trial court did not err in finding that it had jurisdiction over appellant. We overrule appellant's first issue.

**B. Statute of Limitations**

In his second issue, appellant contends the suit was barred by the statute of limitation for a suit adjudicating parentage of a child with a presumed father. *See* TEX. FAM. CODE ANN. § 160.607(a) (West 2014). Specifically, appellant argues that because he was the presumed father of E.H.G. and the Attorney General's action requested the trial court to adjudicate the parentage of E.H.G., the court erred when it denied his motion to dismiss. Appellee argues that even if appellant was the presumed father of E.H.G., section 160.201(b)(1) of the Texas Family Code established the father-child relationship and thus appellant is obligated to pay child support. We agree.

A presumption of paternity exists if, during the first two years of the child's life, a man continuously resides in the household in which the child resides and he represents to others that the child was his own. *See* TEX. FAM. CODE ANN. § 160.204(a)(5) (West 2014). If the child at issue has a presumed father, proceedings brought by a presumed father, the mother, or another individual to adjudicate the parentage of the child must be started before the child's fourth birthday—subject to two exceptions that do not apply to this case. *See* TEX. FAM. CODE ANN. § 160.607(a) (West 2014). However, a proceeding to adjudicate the parentage of a child having no presumed, acknowledged, or adjudicated father may be commenced at any time. *See* TEX. FAM. CODE ANN. § 160.606 (West 2014). If the presumption of paternity under section 160.204 is never rebutted, the father-child relationship is established between the man and the child. *See* TEX. FAM. CODE ANN. § 160.201(b)(1) (West 2014). Section 154.001 empowers a court to order either "parent" to pay child support until certain events. *See* TEX. FAM. CODE ANN. § 154.001(a) (West 2014). The definition of "parent" in section 101.024 includes both a man presumed to be the father of the child at issue and a man legally determined to be the father. *See* TEX. FAM. CODE ANN. § 101.024(a) (West 2014).

In its petition to establish the parent-child relationship, appellee requests the court to determine the parentage of E.H.G. On June 30, 2014, the trial court conducted a hearing on appellant's motion to dismiss based on his alleged status as the presumed father of E.H.G. and the time-barred claim to adjudicate parentage. Appellant testified that he continuously resided with E.H.G. and her mother for seventeen months after she was born. At the conclusion of the evidence presented at that hearing, the trial court issued an oral ruling that Gunn did not meet the requirements to be E.H.G.'s presumed father. On March 30, 2015, the trial court issued findings of fact and conclusions of law which included a finding that Gunn was a presumed father to the child within the meaning of section 160.204(a)(5).

Appellant argues that trial court erred "by not dismissing the paternity and child support actions" when the trial court found him to be the presumed father. To commit reversible error in a civil case, the trial court must have made an error at law that probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). There are primarily two judgments in this case: (1) that appellant is the father of E.H.G.; and (2) the order requiring appellant to pay child support. We do not interpret appellant's second issue to be an attack on the trial court's determination of his parentage—appellant argued in his motion to dismiss that he was the presumed father and he waived the contest of his parentage at trial. Rather, we interpret appellant's argument to be that the trial court's failure to time-bar the suit to determine parentage probably caused the rendition of an improper child support award. We do not agree. Assuming without deciding that appellant was the presumed father of E.H.G., that status was not rebutted before E.H.G.'s fourth birthday. Thus the parent-child relationship was established between E.H.G. and appellant. *See* TEX. FAM. CODE ANN. §§ 160.201(b)(1), 160.204(a)(5). In any case—whether a mere presumed father or a legally established father—appellant is a "parent" pursuant to section 101.024 and thus subject to supporting E.H.G. *See* TEX. FAM. CODE ANN. §

154.001(a); *R.W. v. Texas Dept. of Protective & Regulatory Services*, 944 S.W.2d 437, 440 (Tex. App.—Houston [14th Dist.] 1997, no writ). Appellant fails to show how an earlier finding by the trial court that he was not the presumed father probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 883 (Tex. 2014). Further, appellant should have brought a motion for summary judgment based on his statute of limitations affirmative defense, rather than a motion to dismiss. *In re B.L.A.*, No. 05-07-00933-CV, 2008 WL 2313658, at *1 (Tex. App.—Dallas June 6, 2008, no pet.) (mem. op.) ("[A] party seeking dismissal of a case based on an affirmative defense, such as the statute of limitations, should ordinarily raise that request in a motion for summary judgment.").

The court acted within its statutory authority when it ordered appellant to pay child support as a parent of E.H.G., and now we turn to whether the trial court considered improper evidence when determining the amount of its award. We overrule appellant's second issue.

**C. Child Support**

In his third issue, appellant contends that the trial court erred by allowing testimony and evidence regarding appellant's current spouse's contribution to the household expenses for the purpose of considering deviation from the child support guidelines.

**i. Standard of Review**

This Court should not reverse a judgment based on a claimed error in admitting or excluding evidence unless the complaining party shows that the error probably resulted in an improper judgment. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).

**ii. Analysis**

A trial court cannot consider a spouse's income when calculating net resources for child support. TEX. FAM. CODE § 154.069; *see also Starck v. Nelson*, 878 S.W.2d 302, 305–06 (Tex. App.—Corpus Christi 1994, no writ.). Appellant contends the trial court committed the same error as the trial court in *Starck*.

In *Starck*, Raymond Starck appealed from a child support judgment on several grounds— one of which was that the trial court considered the income of Starch's current wife in violation of an older version of the Family Code. *Starck*, 878 S.W.2d at 304. The court found that Starck's wife's contribution to their joint living expenses would allow Starck to pay more child support than if her were solely responsible for his living expenses. *Id.* at 306. Though the trial court did not use Starck's wife's income to calculate Starck's net resources, it did consider Starck's remarriage when determining whether to deviate from the child support guidelines. *Id.* The Corpus Christi Court of Appeals concluded this was erroneous. *Id.* "Permitting the court to deviate from child support guidelines because the obligor's new spouse contributes to their joint living expenses allows the court to do indirectly what the statute directly prohibits." *Id.* (analyzing older, but similar, sections of the Texas Family Code). *Stark* is distinguishable from this case.

Though there was conflicting evidence presented at the January 12, 2015 trial, appellant's testimony and exhibits introduced some evidence that no deviation from the child support guidelines was needed. Appellant testified about his expenses on direct examination and made statements indicating the figures were for the entire household—such as "Utilities are $250." and ". . . we pay $50 a month towards our credit card." The dollar figures appellant testified to are corroborated by "Respondent's Exhibit 5" which was offered and authenticated by appellant on cross-examination. When authenticating Respondent's Exhibit 5, appellant testified that the

exhibit was a true and accurate representation of his monthly income and his monthly expenses. Later in the proceeding, appellant said that the earlier testimony about his expenses only detailed "[his] part in paying." Attempting to clarify appellant's position, the trial judge later inquired of appellant's counsel if Respondent's Exhibit 5 was appellant's position on what his income and monthly expenses were. Appellant's counsel confirmed appellant's net income was $2,381 and his monthly expenses were $1,352.34. Finally, Respondent's Exhibit 5 is silent to whether each listed expense is only appellant's half of the expense. Resolving the factual issue against appellant, the trial court had some evidence before it that appellant's testimony and Respondent's Exhibit 5 detailed all of appellant's household expenditures. Because appellant's own exhibit detailed that his monthly net income and his monthly expenses left a surplus of $1,028.66, the trial court did not need to consider appellant's current spouse's income when finding that appellant did not need a deviation from the child support guidelines. In fact, it would be difficult for the trial court to have considered appellant's current spouse's net resources in violation of section 154.069 when there is no evidence in the record of her income. If the trial court actually considered appellant's wife's resources when finding that appellant did not need a deviation from the child support guidelines, appellant has failed to show how that error caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *Kia Motors Corp*, 432 S.W.3d at 883. Thus, the introduction of any testimony regarding appellant's wife's contribution to the household would be a harmless error. We overrule appellant's third issue.

**Conclusion**

We resolve appellant's issues against him and affirm the trial court's judgment.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

150439F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF E.H.G, A CHILD

No. 05-15-00439-CV

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-54301-2013.
Opinion delivered by Justice O'Neill.
Justices Bridges and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee THE OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS recover its costs of this appeal from appellant JESSE GUNN.

Judgment entered this 23rd day of August, 2016.