**HELEN B.M., Petitioner,**

v.

**SAMUEL F.D., Respondent.**

Family Court of Delaware, New Castle County.

Submitted: April 25, 1984.
Decided: April 26, 1984.

Joseph H. Geoghegan, Wilmington, for petitioner.

Thomas G. Hughes, Mark D. Sisk, Wilmington, for respondent.

JAMES, Judge.

This is a decision on respondent father's motion to dismiss a petition for support of his allegedly dependent adult son, Pete, brought by Pete's mother, individually and as his next of friend, in order to establish respondent's support obligation to pay 50% of Pete's extraordinary medical expenses and living costs which petitioner is now providing in full.

Petitioner and respondent were divorced in 1962. Petitioner has lived in Pennsylvania since 1978 and respondent in Maryland for the last 20 years. Pete is 31 years old and lives in Pennsylvania where he is currently undergoing psychiatric treatment at a monthly average cost of $2,684.

Petitioner and respondent executed a separation agreement in Delaware in 1962 which provided that Delaware law would govern its provisions as the state of marital domicile. Among other terms, the agreement provided that respondent was to pay petitioner for the support and maintenance of herself and their three children until each child reached age 21 or, if a bona fide student, until each completed their education or reached age 25, whichever occurred first. Petitioner was responsible for the support of the children and agreed to hold respondent harmless and indemnify him against any claim for such support.

Petitioner applied Delaware's general long arm statute, 10 *Del.C.* § 3104(a), in an attempt to subject respondent to this Court's in personam jurisdiction by service of process at an office respondent maintains for occasional use in Wilmington, Delaware. According to petitioner, the requisite to personal jurisdiction is satisfied by minimum contacts with Delaware as the state where the separation agreement was executed and the locus of the last marital domicile, regardless of the fact that both the parents, and their adult son, now reside in other states. Petitioner further bolsters her position by reliance on a recent amendment to the long arm statute which permits nonresidents to use § 3104(a).

In support of subject matter jurisdiction, petitioner points to the Court's power to modify a support agreement under 13 *Del.C.* § 507(a), and the power to order relatives to support a "poor person" under 13 *Del.C.* § 503.

Respondent strenuously resists both the personal and subject matter jurisdiction of this Court, arguing that all of the purported jurisdictional bases, individually or col-

lectively, are not sufficient to empower the Court to act on petitioner's motion. Respondent objects to personal jurisdiction because the execution of the separation agreement in Delaware does not amount to a transaction of business in this state nor is there any act arising from the respondent's current business here which establishes the requisite contact with this jurisdiction. Respondent objects to subject matter jurisdiction because the last marital domicile doctrine, which may support the Court's modification of a separation agreement, requires the continued residence of at least one ex-spouse. Finally, respondent argues that no basis exists under the "poor person" statute because neither Pete nor respondent are residents and the reach of the statute is limited to persons and subjects within the state's jurisdiction.

■ The obvious missing link to the exercise of jurisdiction in this case is the Delaware residence of any one of the three parties: petitioner; respondent; or Pete, the alleged "poor person". The absence of this crucial component defeats both in personam and subject matter jurisdiction. Although this Court has authority to construe and even modify separation agreements as to child support, 13 *Del.C.* § 507(a); *see also, Husband B. v. Wife H.*, Del.Supr., 451 A.2d 1165 (1982), it has no jurisdiction to do so with respect to this particular separation agreement.

■ *Prybolsky v. Prybolsky*, Del.Fam., 430 A.2d 804 (1981), held that support litigation within the last marital domicile amounts to the transaction of business for the purpose of personal jurisdiction over a nonresident respondent only if one of the ex-spouses remains a resident of the forum. The remaining spouse requirement is suggested by Restatement (Second) of Conflict of Laws:

"The state of matrimonial domicile, which is the state where the spouses were domiciled when they last lived together as man and wife, should usually at least have jurisdiction to grant support if the plaintiff spouse has continu-

ously remained domiciled there." § 77 Comment C.

Contrary to petitioner's argument that the language of the Comment does not prohibit other bases for jurisdiction which do not require the presence of the remaining spouse, it appears this standard represents the minimum for exercise of in personam jurisdiction:

"The minimum contacts held sufficient to satisfy due process in the cited matrimonial cases have consisted of as simple an act as the maintenance of the last matrimonial domicile within the forum state, coupled with the petitioning spouse's continued residence in the forum state." *Pinebrook v. Pinebrook*, Fla.Dist.Ct.App. 329 So.2d 343, 348 (1976).

■ Petitioner's claim that the change in Delaware's general long arm statute, 10 *Del.C.* § 3104(c) (amended June 14, 1983), which now makes the statute available to nonresidents, destroys the remaining spouse requisite, as applied in *Prybolski, supra*, is unfounded. The amended statute reads, "[a]s to a cause of action brought by any person arising from any of the acts ..." as opposed to the prior language, "[a]s to a cause of action arising from any of the acts ..." While the amendment makes the statute available to a nonresident, it does not negate the necessity for, "sufficient minimum contacts between defendant and the forum state relevant to the cause of action to satisfy notions of fair play and substantial justice." *Fox v. Fox*, Tex.Civ.App., 526 S.W.2d 180, 182 (1975); *see generally, International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Should this nonresident's purported use of the long arm statute enable this Court to proceed against another nonresident for the benefit of still another nonresident? Obviously not, because Delaware's interest in the cause of action ceased when the last minimum contact, the petitioning spouse, departed.

■ Turning to the issue of support for the nonresident adult son, the separation

agreement alone does not form a basis for in personam jurisdiction. Without construing the agreement in question, the Court notes that there is no allegation of respondent's noncompliance with its terms and conditions. Nor, as in *V.H.B. v. G.A.H.*, Del.Fam., File No. C–1238, Horgan, J. (November 8, 1978), is there an allegation that the agreement provided for extraordinary medical expenses even before the support obligation was to terminate.[1]

 Finally, petitioner contends that Delaware's "poor person" statute, 13 *Del.C.* § 503, creates a duty in respondent to support an indigent adult child. Absent the residence of the petitioner, or the alleged indigent, which may have served as a continuing connection with this jurisdiction under the separation agreement, no other in personam contacts relevant to the cause of action are present which would enable the Court to extend the prior contractual obligation to include a statutory duty. Even if personal jurisdiction is assumed, the Court lacks subject matter jurisdiction over this nonresident "poor person". The intended purpose of the statute is to make designated relatives liable for an indigent's support to avoid the use of public funds. *See Zeigler v. Fowke*, Del.Fam., File No. C–3834 and D–7924, Gallagher, J. (July 26, 1983); *Trustees of the Poor v. Jacobs*, Del. Super., 6 Houst. 330, 331 (1881).[2] Accordingly, this state's interest in the subject matter of the suit ceased when the alleged "poor person" no longer presented the possibility of becoming a public charge.

Petitioner argues that the duty to support a disabled adult child is a common law duty and therefore the statute, as a restatement of the common law, must be construed liberally; respondent, on the other hand, argues for a restrictive construction. The principle which commands a restrictive interpretation of a statute in derogation of the common law is counterbalanced by a view of the statute as remedial and, therefore, deserving of liberal construction. 3 Sutherland, Statutory Construction § 61.03 (1974). However, even a liberal construction does not support giving interstate effect to a statute designed primarily to protect intrastate public funds because, in general, absent a contrary legislative intent, no law has effect beyond its jurisdictional bounds. *See, State ex rel Walker v. Harrington*, Del.Supr., 30 A.2d 688 (1943); 15A C.J.S. Conflict of Laws § 3(1) (1967)[3].

The Court has found no authority, nor has petitioner cited any, which supports the exercise of jurisdiction over a nonresident to determine liability for the support of an adult indigent nonresident under either a separation agreement or a statute. *See, e.g.*, Annot., 1 A.L.R.2d 910 (1948). Therefore, respondent's motion to dismiss is granted.

1. There is little authority for a court to revive a support obligation once it has ended, especially where the extraordinary circumstance, mental incapacity, did not exist at the time the support obligation was in effect. Approximately six years transpired here between the termination of the obligation to Pete and the institution of this suit. See *Kruvant*, 100 N.J.Super. 107, 241 A.2d 259 (1960); Annot; 162 A.L.R. 1084 (1946).

2. Commentators conclude that the rationale of Family Responsibility Laws such as Delaware's is to place the burden of support upon a relative who can pay rather than the community. See "Post Majority Support: Oh Dad, Poor Dad", 44 Temple L.W. 319 (1971).

3. This is not the same principle which operates when a state applies the law of another state, or when one state gives full faith and credit to another's judgment, or when a state participates in uniform reciprocal legislation, such as URESA. Both the respondent and the cause of action must have some connection with the forum. In this case, the support of a nonresident indigent adult is not of sufficient state interest to confer jurisdiction.