**Sybil S. LEWKOWITZ, Petitioner,**

v.

**Horst LEWKOWITZ, Respondent.**

Family Court of Delaware,
New Castle County.

Submitted: March 5, 1985.
Decided: June 14, 1985.

Thomas J. Eastburn, Wilmington, for petitioner.

Eliot Alazraki, Wilmington, for respondent.

WAKEFIELD, Judge.

Petitioner, a New Jersey resident, has petitioned this Court pursuant to 13 *Del. C.* § 639 to register and enforce an order entered by the Superior Court of New Jersey (herein "New Jersey Court") dated February 1, 1982, which reduced to judgment the child support arrears incurred by the petitioner under an earlier order of the same court dated July 19, 1976. The latter order required respondent to pay to petitioner an aggregate of $40 per week for the two sons of the parties, and the February 1,

1982 judgment for arrears entered by the New Jersey Court was for $13,174.45 plus counsel fees of $901.65. Additional arrears have accrued since that time. Respondent opposes the petition to register and enforce primarily on the ground that the New Jersey Court had no *in personam* jurisdiction over the respondent, and, hence, the judgment for arrears is void and of no effect.

The facts are not in dispute. Petitioner and respondent were husband and wife and were residents of New Jersey at the time both children were born. They were divorced by the New Jersey Court on February 3, 1967, in Case No. M–5584–65. Respondent moved to Delaware in 1970 and has remained a Delaware resident ever since. Petitioner and the two children have continued to reside in New Jersey during the entire period following the divorce.

In 1976, petitioner asked the New Jersey Court in the same divorce action for an order of support, and respondent apparently asked the New Jersey Court for an order of visitation. Both appeared in the courthouse for trial, but the matter was settled, and by agreement of the parties, an order awarding petitioner support and respondent visitation was entered on July 19, 1976. The respondent apparently does not challenge the New Jersey Court's jurisdiction to enter that order. Indeed, he could not now do so because he appeared in the action through his attorney and affirmatively sought and received an order for visitation with his sons.

Sometime in 1981, petitioner filed with the New Jersey Court a motion designed to fix the amount of arrears on the July 19, 1976 order and to reduce them to judgment. A copy of that pleading was served on respondent in Delaware by the New Castle County sheriff. A hearing on the motion was scheduled by the New Jersey Court for January 29, 1982. Notice of the hearing was given to respondent in some unspecified fashion, but there is no doubt that he received it because respondent's Delaware attorney wrote to petitioner's New Jersey attorney that respondent

would not attend "as he feels that he is not subject to the jurisdiction of New Jersey." The hearing in New Jersey was held as scheduled, and the New Jersey Court, after noting respondent's non-appearance and after reviewing affidavits and argument of counsel, entered the Order of February 1, 1982, awarding judgment to petitioner for arrears totaling $13,174.45 and also providing that the prior order for child support and medical and dental expenses should continue. The instant Delaware proceeding was filed for the purpose of collecting the judgment so entered.

Respondent does not challenge the technical procedures used by the New Jersey Court in obtaining service upon him in Delaware. He simply asserts that such service cannot legally confer *in personam* jurisdiction over him because he no longer has the "minimum contacts" with that State required by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its numerous progeny.

Obviously, the law of New Jersey applies in the determination of whether its Superior Court had *in personam* jurisdiction over respondent when it entered its Order of February 1, 1982, unless that law is in some fashion violative of the United States Constitution.

In the case of *Ring v. Ring,* N.J.Super., 146 N.J.Super. 373, 369 A.2d 993 (1977), the New Jersey Superior Court, relying on its "long-arm" statute, held that where husband and wife had resided as man and wife in New Jersey and the husband moved to another state, the wife could institute a separate maintenance action in the New Jersey courts and could acquire *in personam* jurisdiction over the husband.[1] It should be borne in mind that the *Ring* case was an original lawsuit designed to obtain an initial order of support. In the case at bar, the initial order of support was obtained in 1976, and the New Jersey action

under attack here was an enforcement action. Respondent in this action attempts to distinguish *Ring* on the thin ground that, in the *Ring* case, the parties were still married at the time the action was instituted and that since the New Jersey Court would have had jurisdiction over the divorce and any alimony petition incident thereto, it was also appropriate for the Court to deal with the preceding separate maintenance action. The simple answer to that theory is that the New Jersey Court itself did not make that distinction. Indeed, that Court stated:

> Originally, the concept of long-arm jurisdiction developed in order to obtain jurisdiction over defendants not subject to personal service within the State, so as to afford relief in tort and commercial cases. There is a definite trend towards applying this concept to all types of litigation, including matrimonial and *support* cases. (Emphasis added).

*Id.,* 369 A.2d at 994. *See also, Egbert v. Egbert,* N.J.Super., 125 N.J.Super. 171, 309 A.2d 746 (1973).

The Pennsylvania Superior Court in *Rogers v. Rogers,* Pa.Super., 295 Pa.Super. 160, 441 A.2d 398 (1982) held that the Pennsylvania long-arm statute could be used to obtain jurisdiction over an absent *former* spouse in a child support action initiated by a Pennsylvania mother where the father had deserted the mother and left the jurisdiction. In that case, there was no marriage contract in existence when the suit was filed.

In *Bergan v. Bergan,* Cal.App., 114 Cal. App.3d 567, 170 Cal.Rptr. 751 (1981), where the California courts had entered a decree of divorce and a child and spousal support order incident thereto, the Court held that California had jurisdiction to enter a judgment for arrears on the order where the father was personally served in Arizona. The Court held:

---

1. For Delaware cases see *Prybolsky v. Prybolsky,* Del.Fam., 430 A.2d 804 (1981); *Helen B.M. v.*

*Samuel F.D.,* Del.Fam., 479 A.2d 852 (1984).

Here California is both a reasonable and a fair forum for this action arising from the parties' marriage and its dissolution. California was the marital domicile. All the children of the marriage were born here. The marriage was dissolved here. The judgment of dissolution which Nora now seeks to enforce is a California judgment arising from Eldon's activities and obligations created in California. Eldon does not dispute the validity of the judgment of dissolution. Indeed, he himself requested entry on the final judgment creating the permanent support obligations. The Superior Court has continuing jurisdiction over him in the dissolution proceeding, for purposes of enforcing the support provisions of the judgment. There is no unfairness to Eldon in requiring him to appear in this action when he could be required to defend enforcement proceedings in the dissolution.

*Id.*, 170 Cal.Rptr. at 753.

In a rather unusual case, a Texas court has held that where Texas originally had jurisdiction over both divorced parties to enter a support order, even when both parties had moved to other states, Texas continued to have jurisdiction for enforcement and modification purposes where it was the last matrimonial domicile and where no other state was a more convenient forum. *Zeisler v. Zeisler,* Tex.App., 553 S.W.2d 927 (1977). The Court in *Zeisler* held:

Since appellee's obligation to support the children arose in Texas and until now has been regulated and defined by a Texas decree ordering him to make payments in Texas, we conclude that requiring him to respond in Texas to a suit to increase the amount of those payments does not offend "traditional notions of fair play and substanal (sic) justice."

*Id.* at 931.

It is also interesting that a special provision in the Oklahoma long-arm statute permits the courts of that state to exercise jurisdiction over non-resident support obligors where the children reside in Oklahoma even though the obligor himself has had no other contacts with Oklahoma, and the Supreme Court of that state has upheld the statute. *See Perdue v. Saied,* Okla.Supr., 566 P.2d 1168 (1977).

The mere passage of time does not affect a court's ability to acquire jurisdiction over a non-resident support obligor as the respondent in this case argues. For example, in *Zeisler,* the support order was entered in 1971, but the modification proceeding against the non-resident was not instituted until 1976. And in *Carlin v. Carlin,* Or. Ct.App., 62 Or.App. 350, 660 P.2d 204 (1983), an order of support was issued by the Oregon Court incident to divorce proceedings filed in 1966. In 1981, the mother moved for an increase in the order and served the father in Arizona many years after he established residence there. In holding that the Oregon Court had *in personam* jurisdiction over the absent father after fifteen years, the Court held: "The dissolution court has continuing personal jurisdiction over father so long as he owes a duty of support to Caryn. This conclusion is supported by the great weight of authority." *Id.,* 660 P.2d at 205.

The only case cited by respondent in support of his position is *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132, *reh'g denied,* 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978). That case is clearly distinguishable on its facts and is, therefore, inapposite. In that case, the parties were married in California but later lived in New York where the children were born. They lived there for ten years until they separated. Although the mother moved to California, she signed the separation agreement in New York. The agreement called for the children to live with the father in New York during the school year and with the mother during the summer. The mother obtained a Haitian divorce which incorporated the separation agreement. Both children then moved to California with the mother who brought an action to register the Haitian decree as a California judgment

in order to increase support. In holding that California had no *in personam* jurisdiction over the father, it is clear from the Court's opinion that the father had no contacts at all with California other than the fact that the parties were married there. California was never the marital domicile of the parties let alone being the last marital domicile; the separation agreement was not executed there; the divorce was not obtained there; the children were not born there; they did not live there at all during the marriage; the father had never asked for relief from the courts there. In this case, the parties were married in New Jersey and divorced in New Jersey; the mother obtained a valid New Jersey support order; the mother and children continue to reside in New Jersey. Hence, the facts in *Kulko* are different from those of the case at bar.

It must be borne in mind that we are not dealing here with a mere agreement between the parties. We are dealing with a Court order by the New Jersey Court which ordered respondent to pay child support. Although the foregoing cases use various theories, it seems clear, at a very minimum, that a court may acquire jurisdiction over a non-resident for the purpose of entering an initial support order where the custodial parent and the children have continued to reside in the jurisdiction of the last marital domicile, and the action is filed in that state. It further appears that where the forum state had *in personam* jurisdiction over both parties when it entered the initial support order, it has continuing jurisdiction to enter subsequent enforcement and/or modification decrees provided that appropriate notice is given. Here, even if the proceeding in New Jersey had been to obtain an initial support order, the New Jersey Court would have obtained proper *in personam* jurisdiction over the respondent. In the case at bar, there is little doubt that New Jersey had jurisdiction to reduce the judgment arrears on its own order.

The New Jersey order of February 1, 1982, is hereby registered as an order of this Court, and the petitioner shall have leave to request such other and further relief as she may deem appropriate. Any defense to the entry of the New Jersey judgment should have been raised in that State and not in these enforcement proceedings.