**Donna KING, Petitioner,**

v.

**Clarence A. KING, Respondent.**

Family Court of Delaware,
New Castle County.

Submitted: April 8, 1985.
Decided: July 22, 1985.

Alfred J. Lindh, Wilmington, for petitioner.

Wendie E. Cohen, Wilmington, for respondent.

WAKEFIELD, Judge.

On August 29, 1984, Petitioner (herein sometimes "mother") filed a Civil Support Petition on a Family Court form seeking $260 per week for the support of two children of her marriage to Respondent (herein sometimes "father"). Service by summons was made on the father in the State of Maine pursuant to Delaware's Long-Arm Statute, 10 *Del.C.* § 3104,[1] and also by ordinary mail, 10 *Del.C.* § 974.

On September 11, 1984, respondent wrote to the Clerk of Court acknowledging receipt of the summons. He also contacted an attorney in Maine who also wrote to the Clerk asking that notice of any hearing be sent to her in order that Delaware counsel could be obtained "should court action become necessary." Thereafter, for several weeks, the mother's Delaware attorney and the father's Maine attorney attempted to negotiate a settlement, but on November 16, 1984,[2] the parties were notified of a scheduled hearing before a Master on December 10, 1984. Five days before the hearing, the father's Maine attorney arranged with the father's present Delaware counsel for representation.

On December 4, 1984, the Master entered a disposition as follows:

At the request of Respondent, the hearing on Civil Support Petition 84-8-741-CV now scheduled for December 10, 1984 is to be rescheduled with notice of the new time and date to the parties and counsel. This rescheduling is on the condition that Ms. Cohen enter her appearance in writing no later than December 7, 1984.

On the next day, counsel for the father filed an "Entry of Appearance" stating: "PLEASE ENTER my appearance as attorney for Respondent...."

On January 30, 1985, the Court issued another "Summons in Civil Action" to the parties and counsel, fixing a new hearing for February 21, 1985. On February 15, 1985, counsel for the father filed a Motion to Dismiss for Lack of Jurisdiction which is the subject matter of this decision. Thereafter, the parties entered into a Stipulation of Facts with respect to the Motion and filed memoranda of law.

The parties were married in Virginia in 1968. Two children were born of the marriage in other states. In 1975, the parties moved to Delaware where they purchased a home. The father's place of employment was in Pennsylvania. The parties separated in 1981 and, shortly thereafter, the father moved to Alabama while the children remained with their mother in Delaware. In March of 1983, the father moved to Maine. The mother and children have continued to reside in Delaware until the present.

While the father lived in Alabama, the parties negotiated a written Separation Agreement dated May 24, 1982. Negotia-

---

**1.** Although the Sheriff's return recites service on the Secretary of State of a "Summons and a copy of the Complaint," on September 18, 1984, the file does not contain a copy of the "Summons" allegedly served, and, hence, it is not known what, if anything, the summons commanded the respondent to do. Presumably, the summons was purged from the file. A copy of the summons addressed to the father is attached to an affidavit filed by the mother's attorney. If that is a correct copy, it required respondent to do nothing.

**2.** Although the Stipulation of Facts recites November 16, 1984, there is no copy of the summons in the file. The only copy in the file is of a summons issued to Delaware counsel on November 28, 1984. Presumably, the November 16 summons was purged.

tions had been carried on between the mother's then Delaware attorney and the father's Alabama attorney. The agreement was signed by the mother in Delaware, mailed to the father's Alabama attorney, and after he substituted two new pages, the father signed the document in Alabama and returned it to Delaware where the mother initialed the revised pages. The parties were then divorced on August 16, 1982 on the mother's petition in this Court. The Separation Agreement was not incorporated or merged into the divorce decree.

The father has not been a resident of Delaware since 1981. Since that time, he has only been in the State for the purpose of picking up the children for visitation. He no longer owns real or personal property in this State and carries on no trade or business here. He has carried out to the letter all of the support provisions of the Separation Agreement and, in fact, voluntarily increased the payments called for therein beyond the amounts required.

On the basis of the foregoing facts, the father argues that this Court has no jurisdiction to exercise *in personam* jurisdiction over him. The mother argues, on the same facts, that *in personam* jurisdiction has been acquired by compliance with the Long-Arm Statute and that, in any event, there has been a voluntary appearance both by and on behalf of the father who has waived any objection to jurisdiction and is now estopped to deny it.

In addressing the issue posed by counsel, the Court has treated the Civil Support Petition filed herein as a Petition to Modify a Separation Agreement. To do otherwise would be to treat the agreement as a nullity or non-existent. This being the case, the proceeding, therefore, has some characteristics which would seem to distinguish it from the line of cases referred to in *Lewkowitz v. Lewkowitz*, Del.Fam., 513 A.2d 211 (1985) which deals with personal jurisdiction over a respondent for the purpose of establishment, enforcement, or modification of judicially-ordered child support.

Here we are dealing with an effort to obtain an upward modification of the child support provisions of a Separation Agreement negotiated by the parties at a time when the mother and children were residents of Delaware and the father resided in another state.

In order for this Court to assert *in personam* jurisdiction over a nonresident respondent, the "minimum contacts" test first enunciated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) must be satisfied. The respondent must have sufficient contacts with the forum state in order for the due process requirements of the Fourteenth Amendment to be satisfied. The Delaware Long-Arm Statute, 10 *Del.C.* § 3104, permits the Court to exercise personal jurisdiction over a nonresident where the respondent "transacts any business" in this State. The statute has been construed by both federal and state courts as conferring the broadest possible jurisdiction permitted by the Constitution. *Transportes Aereos De Angola v. Ronair, Inc.,* 544 F.Supp. 858 (D.Del.1982); *Mason & Szmokaluk v. Gordon & Hinckman,* Del.Super., C.A. No. 78–C–JN–55, Taylor, J. (Mar. 31, 1980). In addition, the statute is to be given liberal construction in favor of exercising jurisdiction. *Waters v. Deutz Corp.,* Del.Super., 460 A.2d 1332 (1983). It has also been construed as a "single act" statute which means that jurisdiction over nonresidents may be predicated on a single act or transaction engaged in by a nonresident within the state. *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980).

Thus, it has been held that the execution of a separation agreement within the forum state requiring an obligor to make payments to the wife for herself and the child and to maintain an escrow account in the forum to secure performance were business transactions sufficient to invest the forum state with jurisdiction over a nonresident who defaulted in his performance of the agreement. *Van Wagenburg v. Van Wagenburg,* Md.Ct.App., 215 A.2d

812, *cert. denied,* 385 U.S. 833, 87 S.Ct. 73, 2 L.Ed.2d 68 (1966). *See also Kochenthal v. Kochenthal,* N.Y., 28 A.D.2d 117, 282 N.Y.S.2d 36 (1967); *Brenda C.W. v. John F.W.,* Del.Fam., File No. 234–1978, Wakefield, J. (Sept. 9, 1980).

In the case at bar, however, the father was a nonresident of Delaware at the time the agreement was executed, he did not sign it in Delaware, and he was represented by an out-of-state attorney. The contract did provide that it was to be construed in accordance with Delaware law and that "the Family Court of the State of Delaware, or other appropriate court having jurisdiction" was empowered to make adjustments from time to time in the child support payments called for therein. An agreement which calls for interpretation according to the law of a particular state does not confer jurisdiction on the courts of that state, but the agreement to have adjustments made by the courts of a particular state standing alone might well be construed as an agreement to submit to the jurisdiction of its courts. However, this agreement was made more ambiguous when the phrase "or other appropriate court having jurisdiction" was added. This could just as easily mean that the Delaware Family Court could make the adjustment only if there is an independent basis for jurisdiction at the time the adjustment was sought. The Court cannot say, therefore, that the agreement itself requires the father to submit to the jurisdiction of this Court. In addition, although some of the negotiations for the agreement were transacted in Delaware by the mother's attorney and although she signed it here, no action by the father with respect thereto occurred in this state. Therefore, his execution of the agreement was not a transaction in Delaware thereby vesting this Court with *in personam* jurisdiction over respondent in order to award an increase in the support provisions thereof, particularly where there has been no breach thereof.

Petitioner did not cite the unusual case of *Miller v. Kite,* N.C.Ct.App., 318 S.E.2d 102 (1984), in which the North Carolina Court of Appeals held that where the child lived in North Carolina, the courts of that State had *in personam* jurisdiction over a nonresident father to increase the child support provisions of a separation agreement which the child's father and mother had executed in Illinois. That Court distinguished *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 *reh'g denied,* 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978), cited by respondent, pointing out that the forum state contacts in *Kulko* had all been "imposed" on the father by the decisions of others, that the father in *Kulko* had legal custody, and that he provided a home for the children in his state; whereas, the father in the North Carolina case had agreed for the mother to have custody, thereby permitting her to choose to reside in North Carolina where the father paid support, where he visited with the children, where the children attended school, and where they received protection of its law. In *Miller,* the Court did not rely on the agreement because it was executed by both parties in another state. Rather, the Court relied on acts which the father performed or accepted in the forum state such as paying support there, permitting the child to live there, and accepting the benefits of that state's school system and the protection of its law. The *Miller* case would seem to test the outer limits of "minimum contacts" by a nonresident with the forum state and is not relied upon here. It is only cited to show the trend toward minimizing the "minimum contacts" necessary to acquire *in personam* jurisdiction.

The foregoing decision that the execution of the agreement in another state is not the transaction of business in Delaware is not necessarily the end of it. The courts of this state have held many times that parents cannot by contract "bargain away" their responsibility to support children adequately. *Coneys v. Coneys,* Del.Supr., 269 A.2d 777 (1969); *G.W.F. v. G.P.F.,* Del. Supr., 271 A.2d 38 (1970); *Solis v. Tea,*

Del.Supr., 468 A.2d 1276 (1983). In *Solis v. Tea,* the Court stated:

> Moreover, although a court may not arbitrarily disregard a separation agreement, its power to review the adequacy (or excessiveness) of child support provisions is not "handcuffed" by the existence of a marital contract. *See Stancill v. Stancill,* Md.App., 286 Md. 530, 408 A.2d 1030 (1979). *See generally* 71 A.L. R.2d 1370 (1960). The agreement will be evaluated according to a "best interests of the child" criteria with the terms of the contract being enforced only where they appear to be reasonable and fair. *See, e.g., Moulton v. Moulton,* Vt.Supr., 134 Vt. 125, 352 A.2d 680 (1976). This Court stated in *G.W.F. v. G.P.F.,* Del. Supr., 271 A.2d 38 (1970): " ... it is only when the parents' contract is consistent with the welfare and best interests of the child that the agreement for support may be given controlling effect." *Id.* at 39. Thus, according to the overwhelming weight of authority, child support contracts demand stricter scrutiny by the courts and bind neither the child, the public, nor the reviewing judicial body.

*Id.* at 1282.

It follows, therefore, that the agreement may be reviewed by a court for the purpose of determining whether it provides adequate support. According to the agreement itself, Delaware law will apply in making that determination. Delaware is also the last marital domicile of the parties. The mother and children lived in Delaware at the time the agreement was signed, and they still live here. Under the prevailing trend of cases liberally construing statutes with "doing business" or "transacts any business" language, those acts alone have been held to be sufficient to confer *in personam* jurisdiction over a nonresident respondent. See *Prybolsky v. Prybolsky,* Del.Fam., 430 A.2d 804 (1981); *Lewkowitz v. Lewkowitz,* Del.Fam., 513 A.2d 211 (1985) and cases in other states cited therein.

In *Helen B.M. v. Samuel F.D.,* Del.Fam., 479 A.2d 852 (1984), this Court was faced with an issue similar to the one presented here. Although the contract in that case was executed in Delaware, it is obvious from reading the opinion that this fact was not significant in reaching the decision. Citing Restatement (Second) of Conflict of Laws § 77 comment c (1971), that case reinforced the holding of the two previously-cited cases that the continued residence of the custodian parent and child in the state of the last matrimonial domicile is sufficient standing alone to satisfy the due process requirement. *Prybolsky* and some of the cases cited in *Lewkowitz* stand clearly for the proposition that the forum state may obtain *in personam* jurisdiction over a nonresident to establish an initial child support order where the forum state was the last marital domicile of the custodial parent and where that parent and the children continue to reside in the forum state. Inherent, but not specifically stated in those cases, is the premise that the act of maintaining a marital domicile in a given state, with all the other activities that this act encompasses, is tantamount to doing or transacting business in that state. It is this factor which distinguishes this case from *Kulko v. Superior Court.* In that case, the respondent never had any significant contact with the forum state. It was never a domicile of the parties when they lived together, let alone their last marital domicile.

■ If, under precedents cited above, the petitioner in this case could institute a new child support action against a nonresident in Delaware, this being the last marital domicile, there would seem to be no reason why she should not be able to test the adequacy of the support provisions of a separation agreement in this court, especially where the agreement calls for application of Delaware law. If respondent is paying inadequate support, this is only a difference of degree from paying no support at all. In either case, the "best interests" of the child are not being met or

fulfilled. I hold that the maintenance in Delaware by the parents of their last marital domicile, with all the other activities attendant thereto, constitutes transaction of business in this State within the meaning of the Delaware Long-Arm Statute and that this is sufficient to confer upon this Court *in personam* jurisdiction over a nonresident father in order to permit modification of the child support provisions of a separation agreement between him and the mother where the mother and child have continued to live in Delaware.

Having so held, it is unnecessary to discuss, except briefly, the other bases upon which jurisdiction is claimed by petitioner.

■ Petitioner asserts that service by certified mail of the complaint and summons is sufficient under 10 *Del.C.* § 974. Assuming for the moment the validity of such statute for service within this State or even that it may pass muster for out-of-state notice, that does not automatically negate the constitutional requirements discussed previously. The simple act of receiving a notice or summons by any means does not confer *in personam* jurisdiction over an out-of-state resident unless those constitutional tests are met.

Petitioner contends that the respondent has entered what amounts to a general appearance, and, hence, any defects in service of process or jurisdiction over his person are waived.

■ I do not believe that preliminary letters written by respondent or even communications by his Maine attorney to the Clerk constitute a general appearance by respondent. *See Brenda C.W. v. John F.W.*, Del.Fam., File No. 234–1978, Wakefield, J. (Sept. 9, 1980). The real issue is whether this Court, which has not yet adopted rules patterned after the Federal Rules of Civil Procedure, has maintained the old distinction between special and general appearances and whether an attack on the Court's jurisdiction must be filed simultaneously with such appearance. It has been stipulated that respondent's Delaware

counsel, in some unspecified fashion but presumably orally, contacted the assigned Master to request a continuance of a hearing scheduled for December 10, 1984. The continuance was granted on condition that the attorney enter her appearance in writing no later than December 7, 1984, and she complied by filing a written notice of appearance on December 5. The motion addressed to the Court's jurisdiction was not filed until February 15, 1985, after notice of the rescheduled hearing had been mailed by the Court and received by counsel.

Since this Court has not adopted any version of the Federal Rules as the other courts of this State have done, this Court has no rule similar to Rule 12(b) of the Rules of the Superior Court to which this Court looks in the absence of a particular rule. However, the Family Court Rules are not silent, and those rules must be applied first before any reference can be made to the Superior Court Rules. Rule 130(a) provides:

> Responsive pleadings are not required and are totally discretionary unless otherwise directed in the summons or by this Court; however, the parties may file an answer, admitting or denying the allegations in the petition. The answer may request more detailed allegations, point out inconsistencies in the petition, or raise new matters.

Because no responsive pleadings are required by the above rules, Rule 130(b) provides in part: "Preliminary motions shall be filed promptly, but no later than 5 days prior to a scheduled hearing unless otherwise directed by the Court."

Since this Court has not adopted a rule similar to Rule 12(b) and since this Court's own rules provide the manner for raising defenses, this Court would not look to Superior Court Rules for guidance. Thus, it cannot be said that the distinction between general and special appearances has been abolished in this Court, and that distinction is, therefore, preserved. I do not understand *Rosemary K. v. Kevin D.C.*, Del.

Fam., 422 A.2d 1272 (1980) to hold to the contrary.

The general rule is that:

A general appearance is one whereby the defendant submits his person to the jurisdiction of the court by invoking the judgment of the court in any manner on any question other than that of the court's jurisdiction over his person ... It has been said that the test of a general appearance conferring jurisdiction over the person is whether the defendant becomes an actor in the cause.

5 Am.Jur.2d *Appearance* § 5 (1962).

As to the effect of a general appearance, the same treatise provides:

A general appearance by the defendant, without *previous objection* to the process or return, operates as a waiver of defects in the process, in the steps preliminary to issuance, in the omission of the signature of the issuing officer, or in the service or return of the process ... *In the case of a nonresident, his general appearance waives the objection that service was made in a foreign state.* (Emphasis added)

5 Am.Jur.2d *Appearance* § 7 (1962).

█ Although it has been stated that, as a general rule, a motion by a respondent or defendant for continuance of a scheduled hearing or for an extension of time to answer or otherwise plead constitutes a general appearance, it also appears that there is a decided split of authority on this subject. *See* 5 Am.Jur.2d *Appearance* §§ 24–25. The better-reasoned rule, in this Court's opinion, would normally hold that a simple request for a continuance is not a general appearance since it may be made for the purpose of obtaining additional time to inquire into the facts and law pertaining to jurisdictional issues.

█ But in this case, the request for a continuance coupled with the unqualified written entry of appearance within the deadline fixed by the Master should be held to constitute a general appearance. Any challenge to the Court's jurisdiction should have accompanied the notice of appearance. Although there is nothing in the Stipulation of Facts on the subject, it seems quite clear from the Master's order that, as a condition to obtaining a postponement of the scheduled hearing, the respondent was to enter his appearance through his counsel. The whole idea was to have an attorney in the case on behalf of respondent who would respond on the merits.

While Rule 130(b) permits preliminary motions to be filed up to 5 days before a scheduled hearing and while this might permit a respondent who files no pleading at all or who makes no demand for any kind of relief to challenge jurisdiction over his person under the provision of that rule, I do not believe that a person who requests a continuance, who obtains one on condition that an appearance be entered, and who enters an unconditional appearance in response thereto should later be heard to argue that there was no appearance at all or that the appearance was really special rather than general.

Having held that this Court has *in personam* jurisdiction over respondent, the Motion to Dismiss for Lack of Jurisdiction is denied, and a hearing on the merits should be scheduled.

IT IS SO ORDERED.