**R.W., Appellant,**

v.

**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.**

No. 14–96–01264–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 27, 1997.

Johnette S. Duff, League City, for appellant.

B. Warren Goodson, Jr., Galveston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

ANDERSON, Justice.

R.W. appeals a final judgment terminating any parental rights he had as the biological father of M.Y. In two points of error, appellant argues that his parental rights were improperly terminated. He seeks a new trial. We affirm the judgment of the court below.

The minor child, M.Y., was born on May 26, 1993. At her birth, M.Y. tested positive for cocaine. Her mother, Michelle, had already had two older children taken from her by the State because she had threatened to kill herself and take her children with her. Social workers were monitoring M.Y.'s status due to these past problems.

Michelle and appellant were under court order to take M.Y. to protective day care daily, but they failed to do so except on rare occasions. Appellant testified that while he lived with her, M.Y.'s mother would sometimes do "crazy, irrational things." He also testified that "Michelle had a problem.... Mental problem, drugs." In addition, appellant was aware of the circumstances surrounding the termination of Michelle's rights to her older children and was present at that termination hearing. Nevertheless, sometime near the end of 1993, appellant moved out of the home, leaving M.Y. with her mother. Due to Michelle's continued non-compliance with court orders, M.Y. was taken into CPS custody on January 27, 1994.

Seeking to establish his parentage, appellant filed a voluntary Statement of Paternity on February 3, 1994, and filed a Petition in Intervention for Conservatorship on April 6, 1994. Although the trial court had not adjudicated appellant to be M.Y.'s father, on February 2, 1995, the State filed a petition to terminate the parental rights of both Michelle and appellant.[1] As grounds for terminating appellant's parental rights, the State claimed that appellant had knowingly allowed the child to remain in conditions or surroundings which endangered her physical or emotional well-being; that he engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered her physical or emotional well-being; and that he failed to support the child in accordance with his ability during a period of one year ending within six months of the date this petition was filed.

At the termination hearing, appellant testified that, although he had the ability to support M.Y. over the years following her birth, he had provided no financial support whatsoever for her care. In addition, testimony at the hearing supported the State's allegation that, when appellant left M.Y. with Michelle, he knowingly abandoned her in a threatening situation, with a person who engaged in conduct that endangered her physical and emotional well-being. Other testimony established that M.Y. has been in the custody of her foster parents, who have indicated a willingness to adopt her, since she was removed from Michelle's home. Appellant testified that he has rarely visited the child or inquired about her well-being. The visits he has had with her have been strained since M.Y. does not know him and is uncomfortable when she is left alone with him. At the hearing, appellant admitted that he may not be in a position to take custody of M.Y. himself, but requested that the child be placed with a biological relative, his sister. Based on the evidence presented at the hearing, the trial court issued an order on July 12, 1996, terminating appellant's parental rights.

In order to terminate the parent-child relationship, the trial court must find by clear and convincing evidence: (1) that termination is in the best interest of the child and (2) that

---

1. Michelle's parental rights have since been terminated.

the parent committed one or more of the acts specifically named in the Family Code as grounds for termination. TEX.FAM.CODE ANN. § 161.001 (Vernon 1996). In this case, the court found the following statutory grounds for termination: (1) appellant knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the child's physical or emotional well-being; (2) he engaged in conduct, or knowingly placed the child with persons who engaged in conduct, which endangered the child's physical or emotional well-being; and (3) he failed to support the child in accordance with his ability during a period of one year ending within six months of the date the petition was filed. *See* TEX.FAM. CODE § 161.001(1)(D), (E), & (F). The court concluded that the best interests of M.Y. would be served by terminating the parent-child relationship between appellant and the child.

■ On appeal, appellant argues that the trial court erred in terminating his parental rights without first ruling on his petition to establish paternity or his petition in intervention, which also sought to establish his paternity. Appellant relies on *Djeto v. Texas Dep't of Protective and Regulatory Servs.* to argue that, without a decree establishing his paternity, he had no duty to support the child financially or to protect the child from persons or surroundings which threatened her physical or emotional well-being. 928 S.W.2d 96, 98 (Tex.App.—San Antonio 1996, no writ).[2] Thus, he contends, the court improperly terminated his parental rights on grounds that he neglected to perform parental acts which he had no duty to perform until his parentage was established. *See id.*

*Djeto* is distinguishable. In that case, the court was faced with an *alleged* biological father who had, at various times, equivocated on the question of his paternity of the child. *Id.* The court held that, until the blood test and subsequent decree established paternity, the child's alleged father had no duty to support the child and no responsibility to protect the child's physical and mental well-being. *Id.* Thus, his rights were improperly terminated on those grounds. *Id.* In this case, however, appellant is not merely an *alleged* biological father of the child, he is M.Y.'s *presumed* father.

The Texas Family Code states that a man is presumed to be the biological father of a child when "before the child reaches the age of majority, he receives the child into his home and openly holds out the child as his biological child." § 151.002(a)(5) (Vernon 1996). Prior to her birth, appellant had lived with M.Y.'s mother for approximately one year, and he continued living there for about seven months after the child was born. While he was still living in the home with M.Y., appellant told members of his family and employees of Children's Protective Services that she was his child. In December of 1993, he acknowledged in open court that he was M.Y.'s biological father, and in February of 1994 he filed a sworn statement of paternity with the trial court acknowledging that he was the child's father.[3] Based on this evidence, we hold that appellant is M.Y.'s presumed father because he received her into his home and held her out to others as his child.

■ Under the Texas Family Code, a presumed father is treated the same as all other parents, natural or adoptive. *See* § 101.024

---

**2.** At least one court has recognized the inconsistency in permitting a parent to protest the termination of the parent-child relationship while at the same time disavowing their duty to support the child. *See In re R.D.S.*, 902 S.W.2d 714, 719 (Tex.App.—Amarillo 1995, no writ).

**3.** This statement, standing alone, is sufficient to establish appellant's parentage and duty to support the child. *See* TEX.FAM.CODE § 160.203 (Vernon 1996). However, in this case the statement was filed less than one year prior to the filing of the State's petition to terminate appellant's parental rights. If the State had relied on the

Statement of Paternity alone to establish the date appellant's parental duties arose, the State could not have properly terminated appellant's parental rights for failure to support the child *for one year* because one year had not expired between the time appellant's duty to support was established and the time the State's petition was filed. In addition, the State could not have terminated his parental rights due to his failure to protect the physical and mental well-being of the child because, at the time the Statement of Paternity was filed, the child was safely in the protective custody of the State.

(Vernon 1996) (defining all references to the term "parent" in the family code as including: "the mother, a man presumed to be the biological father or who has been adjudicated to be the biological father by a court of competent jurisdiction, or an adoptive mother or father."). Just like all other parents, appellant shouldered the duty to "support the child, including providing the child with clothing, food, shelter, medical and dental care, and education"[4] and the duty of "care, control, protection, and reasonable discipline of the child." Tex.Fam.Code § 151.003(a)(2) & (3) (Vernon 1996). And just like all other parents, these duties arose long before appellant filed his voluntary statement of paternity and without regard to any adjudication by a court establishing his parentage. The duty existed from the moment appellant, by his actions, recognized the child as his own. Thus, when appellant neglected his parental duties, the State properly relied on his failure to support and protect the child as grounds for terminating his parental rights.

Accordingly, we overrule appellant's points of error and affirm the judgment of the trial court.

---

4. A parent's duty to support his or her minor child exists regardless of whether that parent has been ordered to pay child support. *In re R.D.S.,* 902 S.W.2d at 719. It also exists regardless of whether that parent has custody of the child. *Gomez v. Perez,* 409 U.S. 535, 536, 93 S.Ct. 872, 874, 35 L.Ed.2d 56 (1973).