**Affirmed and Opinion filed March 27, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00462-CV

---

## IN THE INTEREST OF D.M.D., T.S.D., T.M.D., D.M.D. A/K/A D.D., Children

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2004-10615J**

---

## O P I N I O N

In four issues, appellant contends the evidence is legally and factually insufficient to support the trial court's termination of appellant's parent-child relationship with her four children, D.M.D., T.S.D., T.M.D., and D.M.D. a/k/a D.D. We affirm.

### I. BACKGROUND

In 2002, appellant and her four children were living in Oklahoma. At some point during 2002, Oklahoma protective services removed the children due to allegations of abuse and neglect of the children and domestic violence between appellant and her boyfriend, purportedly the children's father. The father's parental rights were terminated. The children were returned to appellant after she completed required services.

Thereafter, appellant and the children moved to Texas.

In 2004, the Texas Department of Family and Protective Services (the "Department") received a referral, alleging appellant had abused T.S.D. and neglectfully supervised D.D. During December 2004, the Department removed all four children from appellant's home. On June 23, 2005, the trial court entered a decree, appointing the Department as the children's permanent managing conservator and appellant as possessory conservator. The trial court also ordered appellant to complete certain assigned services and pay the Department $282.00 per month in child support.

On May 21, 2009, the Department moved to terminate appellant's parental rights. The Department alleged that termination was proper under subsections (F), (I) and (O) of Texas Family Code section 161.001(1)[1] and in the best interest of the children.

On June 29, 2010, the trial court conducted a placement review hearing, which was recorded. Apparently, the parties and the trial court treated this hearing as a trial. During the hearing, the Department caseworker assigned to appellant's case testified, and multiple exhibits were admitted. Toward the end of the hearing, the trial court stated, "I don't want to make any orders until we know what the therapist recommendations are," "We're in trial," and "[T]he kids need permanency and need to get it quick. And I don't want to reset it or continue this for too long." The trial court signed a "Placement Review Order," on which the court noted, "Case is in trial[.] [Mother] will submit to Hair follicle

---

[1] Under these subsections, a trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that termination is in the best interest of the child and the parent has:

> (F) failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition;

> (I) contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261; or

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code Ann. § 161.001(1)(F), (I), & (O) (West Supp. 2011).

2

[and urinalysis] today 6/29/2010[.] Trial will continue on 8/19/10 at 9:00 am. [Mother] will disclose info about treatment [and] therapist she is seeing including medications etc."

Apparently, the August 19, 2010 hearing was continued. At another hearing on November 23, 2010, which was not recorded, the trial court ordered mediation. By this time, a different Department caseworker, Natasha Roy, was assigned. On January 4, 2011, the trial court appointed a new attorney to represent appellant.

On April 26, 2011, the trial court held another hearing, which was recorded. During this proceeding, the Department questioned Roy and presented several exhibits. Appellant also testified. Following this hearing, the trial court signed a final judgment, terminating appellant's parental rights to all four children based on subsections (F), (I), and (O) and the best interest of the children. The trial court also recited that "[o]n April 26, 2011, came on to be heard before this Court" the Department's motion for termination.

Based on this convoluted procedural history, it is difficult to determine when trial actually began. Because of the trial court's recitation in its judgment, we limit our evidentiary review to the record for the April 26, 2011 hearing.[2]

## II. LEGAL AND FACTUAL SUFFICIENCY

In four issues, appellant contends the evidence is legally and factually insufficient to support the trial court's findings that appellant violated subsections (F), (I), and (O) and termination was in the best interest of the children.

### A. Standard of Review

The burden of proof at trial in parental-termination cases is by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of

---

[2] Regardless, our disposition would be the same even if we considered evidence presented during the June 29, 2010 proceeding.

the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (Vernon 2008); *In re J.F.C.*, 96 S.W.3d at 264. A trial court may terminate parental rights only upon proof by clear and convincing evidence that the parent has committed an act set forth in section 161.001(1) *and* termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2).

When considering legal sufficiency of the evidence to support termination, we consider all evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 265–66. We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing factual sufficiency to support termination, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of its finding is so significant a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

The natural right between parents and their children is one of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re U.P.*, 105 S.W.3d 222, 229 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Therefore, a court should strictly scrutinize termination proceedings and the involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re U.P.*, 105 S.W.3d at 229.

**B. Analysis**

**1. Section 161.001(1)(F)**

In her first issue, appellant contends the evidence is legally and factually insufficient to support the trial court's finding relative to subsection (F). Under subsection (F), a trial court may order termination of the parent-child relationship if the

court finds by clear and convincing evidence that the parent has "failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition." Tex. Fam. Code Ann. § 161.001(1)(F). The trial court may not order termination under subsection (F) without clear and convincing evidence of the parent's ability to support her child during the statutory period. *See In re T.B.D.*, 223 S.W.3d 515, 518 (Tex. App.—Amarillo 2006, no pet.).

The Department requested termination pursuant to subsection (F) in its motion for termination, filed March 24, 2009. Accordingly, the relevant time period for consideration of subsection (F) is any twelve consecutive months between September 24, 2007 and March 24, 2009. *See In re C.L.*, 322 S.W.3d 889, 892 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

It is undisputed that in the 2005 decree, appellant was ordered to pay the Department $282.00 per month in child support. The Department argues that a child-support order is prima facie evidence of the parent's ability to pay support for purposes of subsection (F), which the parent can rebut by affirmatively pleading and showing an inability to pay. *See In re J.M.M.*, 80 S.W.3d 232, 250–51 (Tex. App.—Fort Worth 2002, pet. denied), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d at 267 & n.39. We decline to adopt this rule and instead agree with the majority of courts which have considered this issue that a previous child-support order is no evidence of a parent's ability to pay for purposes of subsection (F); to hold otherwise would improperly shift the burden to the parent to disprove ability to pay. *See In re N.A.F.*, 282 S.W.3d 113, 117–18 (Tex. App.—Waco 2009, no pet.); *In re E.M.E.*, 234 S.W.3d 71, 73–74 (Tex. App.—El Paso 2007, no pet.); *In re D.S.P.*, 210 S.W.3d 776, 780–81 (Tex. App.—Corpus Christi 2006, no pet.); *Morris v. Barnes*, No. 03-02-00546-CV, 2004 WL 792201, at *4 (Tex. App.—Austin Apr. 15, 2004, no pet.) (mem. op.); *see also In re C.L.*, 322 S.W.3d at 893 n.2 (recognizing split among courts of appeals regarding this issue). Accordingly, the fact that appellant was ordered to pay $282.00 per month in child support has no bearing on her actual ability to provide support under subsection (F).

Roy provided the following testimony relative to appellant's support obligation. Appellant was aware of her support obligation but did not pay support at any time. The Department would have a record of support payments had any been made. Appellant was not working at the time of trial and informed Roy she was unable to work because she was disabled and receiving social-security benefits. Although there was a period of time when appellant was not visiting the children, the court ordered the visitations to resume in November 2010. Since that time, appellant has visited the children twice a month. Roy attended each visitation and observed that appellant would "take things" for the children, including clothing and money.[3]

Appellant provided the following testimony. Appellant had been unemployed since 2008. In 2008, appellant was hospitalized for one month due to depression. A few weeks after appellant was released from the hospital, she began receiving $674.00 per month in social-security benefits due to her depression. At some point, appellant also began receiving food stamps. In 2008 or 2009, appellant moved to an apartment pursuant to a housing program, requiring her to pay $79.20 per month in rent. At the time of trial, appellant was seeking employment and had a job interview scheduled for the following week. Appellant disagreed that she was seeking employment merely to remain qualified to receive food stamps.

> During appellant's testimony, the following exchange occurred:
>
> [Appellant's counsel:] And you were ordered to pay child support in . . . 2005, would you tell the Court why it is that you were not able to pay the child support?
>
> [Appellant:] I don't remember.
>
> [Appellant's counsel:] Okay. But you were - -
>
> [Appellant:] *I always took my kids things to substitute for my child support. My visits - - or when I didn't have a visit, I would take my kids things to the visit.* [Roy] has picked up things from my house for my children, you

---

[3] We recognize that these visits did not occur within the September 24, 2007 through March 24, 2009 timeframe.

know, that cost more than $282 a month, and all the shoes and stuff like that. So, I would substitute when I had money, *I feel that my gifts for my children, the things that I bought for my children, would substitute for that 282 a month since that time*.

(emphasis added). Appellant admitted she never informed the caseworker that she intended to buy her children necessities instead of paying child support.

Based on appellant's testimony, the trial court reasonably could have found that appellant *always*—meaning from the time she was ordered to pay support until the present—bought her children items in lieu of paying child support; these items would be delivered to the children even when appellant did not have visitation rights. This evidence supports a finding that appellant had the ability to pay some amount of child support during twelve consecutive months between September 24, 2007 and March 24, 2009.

It is well-settled that a parent has a duty to provide support for her child, even when the parent does not have custody of the child and before the trial court orders the parent to pay support. *See R.W. v. Tex. Dep't of Protective & Regulatory Servs.*, 944 S.W.2d 437, 440 & n.4 (Tex. App.—Houston [14th Dist.] 1997, no writ.). Under the Family Code, "support" includes "providing the child with clothing, food, shelter, medical and dental care, and education." Tex. Fam. Code Ann. § 151.001(a)(3) (West 2008). By consistently buying clothing and shoes for the children, appellant ostensibly provided them some support.[4] However, appellant was court-ordered to pay the Department $282.00 per month in child support. During all relevant times, the Department had been the permanent managing conservator of the children and supervised the children while in foster care. Under these facts, appellant's primary support obligation was to pay the court-ordered child support. Nevertheless, appellant ignored this responsibility by providing certain necessities directly to the children—in the process

---

[4] We note that providing *occasional* gifts does not fulfill a parent's obligation to support her child. *See Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 358 (Tex. App.—Austin 2000, no pet.).

circumventing the ability of the Department and the foster families to recoup money they were spending to support the children. Because appellant had the ability but chose not to pay at least some amount of child support, the trial court could have reasonably found appellant failed to support the child in accordance with her ability during a period of one year ending within six months of the date of the filing of the petition.

Accordingly, we hold the evidence is legally sufficient to support a firm belief or conviction that appellant failed to support her children as described in subsection (F). Additionally, we hold the evidence is factually sufficient because evidence weighing against the trial court's finding is not so significant it precluded the court from reasonably forming a firm belief or conviction that appellant failed to support her children as described in subsection (F). Therefore, the evidence is legally and factually sufficient to support the trial court's finding that the Department proved by clear and convincing evidence appellant committed the acts prohibited by subsection (F). Appellant's first issue is overruled. Having concluded the evidence is sufficient to support one of the grounds for termination under section 161.001(1), we need not consider sufficiency of the evidence supporting other grounds under this section. *See Phillips*, 25 S.W.3d 348, 358–59. Instead, we proceed to sufficiency review relative to the best interest of the children.

## 2. Best Interest of the Children

In her fourth issue, appellant contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the children.

In reviewing sufficiency of the evidence to support a best-interest finding, a court may consider several factors, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the

8

parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230. This list is not exhaustive, nor is evidence required on all nine factors to support a finding that termination is in the child's best interest. *Holley*, 544 S.W.2d at 372; *In re U.P.*, 105 S.W.3d at 230.

Although there is a strong presumption that it is in the child's best interest to allow the natural parent to retain custody, the presumption ceases when evidence to the contrary is presented. *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.). The same evidence of acts or omissions that supports termination under section 161.001(1) may be probative in determining a child's best interest. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

We will first consider the desires of the children, the Department's plans for the children, and the stability of the proposed placement. At the time of trial, D.M.D. was thirteen years old, T.S.D. was eleven years old, T.M.D. was ten years old, and D.D. was eight years old. The children did not testify at trial, and no statement was provided on their behalf. However, Roy testified that (1) D.M.D. responds well to appellant, wants to see her, and "is real close to her," (2) T.S.D. and T.M.D. are also close to appellant but do not listen to her and it is "up in air" regarding whether they want to see her, and (3) unlike his siblings, D.D. has told Roy that he does not want to see appellant. Roy also testified, "I believe [the three younger children] are looking for their foster parent to adopt them." Roy denied that the children cry when they are unable to visit appellant.

The foster mother of T.S.D., T.M.D., and D.D. has cared for them for two years and indicated she loves them. The foster mother is willing to adopt these children if their behavior improves. Roy testified that the Department would seek a permanent home for the children even if the foster mother does not ultimately adopt them.

Roy also testified that it is in D.M.D.'s best interest to be adopted by his maternal grandmother, whom he visited periodically. The grandmother has a heart condition and was receiving therapy to determine whether she would be able to care for D.M.D.

9

The evidence supports a finding that D.M.D. lived with a different foster family than his siblings because he was "sexually acting out" toward them. However, the children visited each other, and the Department will continue to allow such visits if appellant's parental rights are terminated. Appellant testified that she does not believe D.M.D. was "acting out sexually" toward his siblings.

We next consider appellant's parenting abilities, her acts or omissions which demonstrate that the parent-child relationship was improper, and any excuses she has offered for her acts and omissions. In November 2010, appellant signed a new FSP, requiring that she, among other actions, complete psychiatric, psychological, and substance-abuse evaluations, follow all recommendations stemming from the evaluations, complete parenting classes, and maintain employment and safe, stable housing. Roy testified that the court orally ordered appellant to comply with the 2010 FSP.[5] Roy told appellant that "if she really wanted her kids, she needed to work her services and work with [Roy]."

In October 2010, appellant received a psychological evaluation. According to the evaluating psychologist, appellant "minimized or otherwise misrepresented various aspects of her personal history, including her substance abuse history, her relationship history, and her mental health history." Notably, appellant disclosed that she had been diagnosed with bipolar disorder but refused to discuss the details of her involuntary psychiatric hospitalization in 2005 or why she sought psychiatric services in 2010. Appellant also denied that she and her ex-boyfriend engaged in physical violence; this statement conflicted with information appellant provided in 2005. Appellant told the psychologist that doctors had prescribed her several psychiatric medications—including Risperdal in 2010—but she discontinued using the medications because "she disliked the side effects." Among several recommendations, the psychologist recommended that appellant's psychiatric-treatment records be obtained "to assist in case management and

---

[5] However, there is little or no evidence that the trial court's order "specifically established the actions necessary for [appellant] to obtain the return of the [children]." *See* Tex. Fam. Code Ann. § 161.001(1)(O).

treatment planning."

In January 2011, appellant received a psychiatric evaluation. The evaluating psychiatrist noted that appellant initially arrived for evaluation in December 2010 but was sent home because she was uncooperative and responded "none of your business" when asked questions. Appellant testified she was uncooperative because the psychiatrist asked her to disclose personal information. Nevertheless, appellant returned for evaluation one month later. Appellant told the psychiatrist that she was prescribed Risperdal by a doctor from Legacy Clinic and had been taking the medication for one year; this statement conflicted with information appellant provided to the psychologist. Appellant also rejected the psychiatrist's recommendation to receive intramuscular injections to promote medication compliance.

According to Roy, appellant was required under the 2010 FSP to sign a release allowing the Department to obtain certain medical information relevant to this case. Roy testified appellant previously informed the trial court that she had been receiving individual counseling at Legacy Clinic. However, Roy did not know the nature of treatment appellant was receiving at Legacy Clinic. Appellant refused to sign a release authorizing Legacy Clinic to disclose information to the Department. Roy testified appellant never explained why she refused to sign the release. Roy also testified appellant's refusal to sign a release was "in keeping with her conduct and refusal to give information throughout this case." Appellant testified that she refused to sign the release because there was no language identifying the intended recipient or whether it pertained to medical records. Appellant also testified that she had signed another release during the course of this case "when [she] thought [the release was] appropriately filled out."

Roy further testified that appellant received individual counseling at Texas Life Enhancement at the Department's expense. The record contains three "Progress Notes" from Texas Life Enhancement for January and February 2011. These notes demonstrate that appellant initially denied personal responsibility for shortcomings regarding her family life, employment, and living situation but apparently was making progress with

11

her therapist.

Roy testified she had not received proof that appellant completed a substance-abuse evaluation or a parenting class, followed the recommendations stemming from her psychiatric and psychological evaluations, or obtained employment. When Roy asked appellant why she failed to complete her substance-abuse evaluation, appellant replied that the provider kept rescheduling her appointment. However, Roy was told by the provider that appellant failed to attend orientations for the evaluation.

Appellant completed a parenting class in 2007 but had not completed a parenting class pursuant to the 2010 FSP. According to Roy, appellant was required to attend another parenting class because the class was "only good for a year." Nevertheless, Roy agreed "it would be kind of impossible" for appellant to pay for a parenting class because she was unemployed. Appellant testified that she had not completed another parenting class because she was unable to find a class and had recently received paperwork from Roy regarding the class. Appellant explained she was unable to afford any of the parenting classes recommended by Roy.

According to appellant, she had not completed all her services because of time and financial constraints. Appellant testified that she is committed to attending individual therapy and a weekly class for her housing program and was actively seeking employment. Appellant stated that she was not pursuing services without first following Roy's recommendations.

As noted above, appellant testified that she had been unemployed since 2008 but was seeking employment. She was receiving social-security benefits and food stamps. Appellant was ordered to pay child support every month to the Department but instead decided to provide items directly to her children. In a letter drafted shortly after the Department became the permanent managing conservator in 2005, a therapist noted appellant undermined the foster parent by bringing her children clothing: "Reportedly, the mother undermines the efforts of the foster parent by undressing [the children], redressing them with items purchased by her. The items purchased by the foster parent,

12

reportedly, are not returned to the children and/or foster parent."

Regarding appellant's living arrangement, she obtained a one-bedroom apartment through a housing program. Pursuant to the program, appellant was required to attend a weekly class which related to topics such as drug-abuse prevention and nutrition. Roy testified that appellant was doing well in the program and maintained a clean apartment. Appellant admitted she was not ready for her children to be returned to her because she lived in a one-bedroom apartment. When asked why she was "still not quite ready" to have her children returned even after six years appellant explained that "[a] lot has gone on between here and there," including moving and her diagnosis of depression.

Pertaining to her mental health, appellant testified that she does not suffer from "manic rage" or "Bipolar Level 2." Appellant explained she was taking Risperdal which, according to her doctor, was all she needed to treat her depression.

Roy provided the following testimony regarding the children's behavioral changes after visitations with appellant resumed in November 2010. There was a period of time when appellant was not allowed to visit the children; during this period, the children were better behaved for the foster mother. After visits resumed, the children's behavior suddenly worsened. The children "were walking off from the foster parent, leaving school, getting into fights," and their school grades lowered. The children displayed similar problems when they previously had visitations with appellant. Roy admitted that appellant acted appropriately during the visits. Appellant testified that the visits were fun and "going fine." According to appellant, Roy told her the children were misbehaving even before the visits resumed. Further, appellant testified that the children's ad litem explained the children were "difficult" because they have behavioral problems and are on medication.

All of the children are prescribed medications for ADHD or bipolar disorder. Roy testified she was unsure whether the children suffered from these conditions when they were initially placed into the Department's custody. Roy admitted the children were not responding well to therapy but opined that continued therapy might be beneficial. Roy

13

also opined that the children's behavioral problems were not caused by their living in a non-adoptive foster home but by the "on and off" visitations with appellant. According to Roy, the children's behavior would improve if the visits ceased.

In sum, the foregoing evidence supports the following findings: (1) the children have serious mental health conditions and behavioral problems; (2) D.M.D. desires to visit appellant, T.S.D. and T.M.D. are agnostic regarding visiting appellant, and D.D. does not want to visit appellant; (2) the three younger children want to be adopted by their foster mother; (3) the foster mother will adopt the children if their behavior improves; (4) there is a possibility D.M.D. will be adopted by his maternal grandmother; (5) regardless of whether the children are adopted by their current caretakers, the Department will seek a permanent home for them; (6) the children have not had a permanent, stable home since they were placed into the Department's custody in December 2004; (7) appellant was unemployed, lived in a single-bedroom apartment, and was not prepared to have her children returned; (8) even after six years, appellant still refuses to cooperate fully with, and provides inaccurate information to, the Department and service providers; (9) appellant failed to complete the services outlined in her 2010 FSP and follow recommendations from service providers; (10) appellant refused to accept certain unpleasant facts, such as D.M.D. "sexually acting out" toward his siblings; and (11) the children's behavior worsened because visitations with appellant resumed.

We hold the evidence is legally sufficient to support a firm belief or conviction that termination of appellant's parental rights is in the best interest of the children. Additionally, we hold the evidence is factually sufficient because evidence weighing against the trial court's finding is not so significant it precluded the court from reasonably forming a firm belief or conviction that termination was in the best interest of the children. Accordingly, the evidence is legally and factually sufficient to support the trial court's finding the Department proved by clear and convincing evidence that termination of appellant's parental rights was in the best interest of the children. *See, e.g.*, *In re M.L.J.*, No. 2-07-178-CV, 2008 WL 1932076, at \*7 (Tex. App.—Fort Worth May 1,

14

2008, pet. denied) (mem. op.) (considering, among other acts and omissions, parents' refusal to cooperate with Department as evidence termination was in child's best interest); *In re J.J.*, 05-06-01472, 2008 WL 223841, *5–6 (Tex. App.—Dallas Jan. 29, 2008, no pet.) (mem. op.) (same).  We overrule appellant's fourth issue.

We affirm the trial court's judgment.

/s/     Charles W. Seymore
           Justice

Panel consists of Justices Seymore, Boyce, and McCally.