

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00200-CV

**IN THE INTEREST OF C.R.**, V.R., Jr. & J.R., Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00860
Honorable Rosie S. Gonzalez, Judge Presiding[1]

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: September 23, 2020

AFFIRMED

Appellant M.T. appeals the trial court's order terminating her parental rights to her children, C.R., V.R., Jr., and J.R.[2] In two issues, M.T. argues the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(O) and that termination is in the children's best interests. We affirm the trial court's order.

### BACKGROUND

In April of 2018, the Texas Department of Family and Protective Services ("the Department") removed M.T.'s five children from her care due to concerns about physical neglect

---

[1] The Honorable Antonia Arteaga is the presiding judge of the 57th Judicial District Court. The Honorable Rosie Speedlin Gonzalez, sitting by assignment, presided over the hearing and signed the order at issue in this appeal. *See* TEX. GOV'T CODE ANN. § 74.094(a).

[2] To protect the privacy of the minor children, we use initials to refer to the children and their biological mother. TEX. R. APP. P. 9.8(b)(2); TEX. FAM. CODE ANN. § 109.002(d).

and neglectful supervision of the children by M.T. and her then-partner, V.R., who is the father of the three children involved in this appeal.[3] At the time of trial, these children were six, four, and two years old.

On April 24, 2018, the Department filed a petition to terminate M.T.'s and V.R.'s parental rights, obtained temporary managing conservatorship over the children, and placed them in foster care. The Department also created a service plan requiring M.T. to, inter alia, complete parenting and anger management classes, engage in counseling, pass random drug screenings, and attend visits with her children as a condition of reunification. As a result of ongoing concerns, the Department pursued termination of M.T.'s and V.R.'s parental rights.

Twenty-three months after the children's removal, the trial court held a one-day bench trial at which M.T. and V.R. appeared. The trial court heard testimony from seven witnesses: (1) V.R.; (2) M.T.; (3) the children's counselor, Marie Mason; (4) V.R., Jr.'s and C.R.'s school counselor, Heidi Staples; (5) the children's foster mother; (6) Department Caseworker, Priscila Sandoval; and (7) Judith Pfeifer, a family therapist who conducted joint therapy sessions with M.T. and the children. At the conclusion of trial, the court signed an order terminating M.T.'s parental rights pursuant to section 161.001(b)(1)(O) and terminating V.R.'s parental rights pursuant to section 161.001(b)(1)(E), (N), and (O). The trial court also found that termination of M.T.'s and V.R.'s parental rights was in the best interests of the children. M.T. appealed. V.R. is not a party to this appeal.

## ANALYSIS

M.T. challenges not only the legal and factual sufficiency of the evidence supporting the trial court's finding under section 161.001(b)(1)(O), but also the legal and factual sufficiency of

---

[3] The proceedings involving M.T.'s two older children were resolved in an interlocutory order and severed into a different cause. M.T.'s parental rights to those children are at not at issue in this appeal.

the evidence on which the trial court relied to conclude that termination was in the best interests of the children.

***Standard of Review***

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate M.T.'s parental rights and that termination was in the best interests of the children. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the legal and factual sufficiency of evidence supporting a trial court's order of termination, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all

evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could "form a firm belief or conviction" that the matter that must be proven is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all of the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both a legal sufficiency review and a factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re E.X.G.*, No. 04-18-00659-CV, 2018 WL 6516057, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Predicate Statutory Ground (O)*

#### *Applicable Law*

"Texas courts take a strict approach to [the] application of subsection (O) as a ground for termination of parental rights." *In re A.M.M.*, No. 04-15-00638-CV, 2016 WL 1359342, at *3

(Tex. App.—San Antonio April 6, 2015, no pet.) (mem. op.). Under this subsection, the trial court must find, by clear and convincing evidence, that the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . ." TEX. FAM. CODE § 161.001(b)(1)(O). Substantial compliance is not enough to avoid a termination finding under this subsection. *In re I.G.*, No. 04-15-00406-CV, 2015 WL 7566088, at *4 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.). "The burden of complying with a court order is on the parent, even if the parent is incarcerated." *In re A.M.M.*, 2016 WL 1359342, at *3.

*Application*

M.T. argues the evidence is legally and factually insufficient to show she failed to comply with the terms of her family service plan. According to M.T., the trial court based its finding solely on Department Caseworker Sandoval's testimony that she did not satisfy the goals of her family service plan, rather than on evidence that she failed to meet the specific terms of that plan.

The Department filed the family service plan with the trial court, and the court incorporated it as a court order, as required by the Family Code. *See, e.g.*, TEX. FAM. CODE ANN. §§ 263.101, 263.106; *In re J.T.*, No. 04-17-00781-CV, 2018 WL 1935566, at *1 (Tex. App.—San Antonio Apr. 25, 2018, no pet.) (mem. op.). M.T. signed that family service plan, which required her to, inter alia, complete parenting and anger management classes, engage in counseling, pass random drug screenings, and attend visits with her children as a condition of reunification.

At trial, M.T testified she satisfied all the terms of her family service plan, including its requirement that she attend all scheduled visits with her children. She testified the only time she missed a scheduled visit was when the foster parents did not bring the children to a visit. However, Sandoval testified M.T. missed two scheduled visits with the children—one because M.T. was

incarcerated for four days due to a probation violation, and one because M.T. said she was not feeling well.

Here, the Department produced evidence that M.T. failed to fully comply with the terms of her service plan by missing two scheduled visits. The trial court, as factfinder, was free to disbelieve M.T.'s testimony that she satisfied all the terms of her plan, and we must defer to that resolution. *See In re E.X.G.*, 2018 WL 6516057, at *1. We also remain mindful that Texas courts, including this court, take a strict approach when evaluating subsection (O), and that substantial compliance with a service plan "is not enough to avoid termination" of M.T.'s parental rights under subsection (O). *See In re I.G.*, 2015 WL 7566088, at *4. Accordingly, after reviewing the evidence in the light most favorable to the judgment, we conclude the trial court could reasonably have formed a firm belief or conviction that M.T. failed to comply with the term of her court-ordered family service plan that required her to attend all of the scheduled visits with her children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore overrule M.T.'s legal sufficiency challenge to the trial court's finding that she violated section 161.001(b)(1)(O).

Turning to M.T.'s factual sufficiency challenge, M.T. disputes the Department's assertion that she missed multiple visits with her children. She testified that she missed one visit because the children's foster parents cancelled it, and denies missing any other visits. However, in a factual sufficiency review, we "must give due deference to" the factfinder's resolution of disputed evidentiary issues and may not supplant the factfinder's judgment with our own. *In re H.R.M.*, 209 S.W.3d at 108–09. Here, Sandoval's testimony about the number of and reasons for the missed visits conflicted with M.T.'s testimony. In light of this conflicting testimony, the evidence is not such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. As a result, we overrule M.T.'s factual sufficiency challenge to the trial court's finding that she violated section 161.001(b)(1)(O).

To the extent M.T. argues section 161.001(d) of the Family Code precluded the trial court from terminating her rights under subsection (O), we disagree. *See In re Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) (holding record and briefing were sufficient to require consideration of section 161.001(d) issues). Section 161.001(d) precludes termination under subsection (O) if the parent proves by a preponderance of the evidence that: (1) she was unable to comply with specific provisions of the court order incorporating the service plan; and (2) she made a good faith effort to comply with the order and her failure to comply is not attributable to any fault of her own. TEX. FAM. CODE ANN. § 161.001(d). The trial court specifically found M.T. did not meet her burden under this statute, and M.T. does not present any argument or evidence in her brief challenging that finding. TEX. R. APP. P. 38.1. Moreover, the record shows M.T. testified she was arrested three times during this case and spent a total of six months away from her children while she was in jail. That testimony, when considered alongside Sandoval's testimony that M.T. missed a visit because she was incarcerated, is legally and factually sufficient to support the trial court's finding that M.T. did not show by a preponderance of the evidence that her failure to comply with the service plan was not attributable to any fault of her own. *See* TEX. FAM. CODE ANN. § 161.001(d); *In re J.F.C.*, 96 S.W.3d at 266.

After reviewing all the evidence—including the evidence on which M.T. relies—we conclude a reasonable factfinder could reasonably have formed a firm belief or conviction that M.T. failed to comply with all the terms of the court-ordered service plan. We therefore hold that legally and factually sufficient evidence supports the trial court's finding under subsection (O), and overrule M.T.'s arguments to the contrary.

### *Best Interests*

### *Applicable Law*

Next, M.T. challenges the sufficiency of the trial court's order that termination of her parental rights was in the best interests of the children. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. In determining whether the Department satisfied this burden, the legislature has provided several factors for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment.[4] TEX. FAM. CODE ANN. § 263.307(b). Courts may also apply the list of factors promulgated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[5]

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or

---

[4] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE ANN. § 263.307(b).
[5] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*.

conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *Application*

M.T. testified that she worked hard to find a suitable home for her children. She stated she lives alone in a two-bedroom duplex she has prepared for the children's return and that she has two part-time jobs that are sufficient to pay her bills. She also testified she no longer uses drugs, and Sandoval confirmed M.T. has not tested positive for drugs in a year and a half. Moreover, Pfeifer, the family therapist for M.T. and the children, testified that the rapport between M.T. and the children "has certainly developed. And there is a lot of bonding going on." Pfeifer also testified M.T. has good interactions with the children and redirects them from inappropriate behavior in a positive way, that V.R., Jr. behaves properly around M.T., and that C.R. is excited about seeing M.T. Pfeifer testified that she believes M.T. has the capability and potential to care for the children. She conceded, however, that because she has only seen M.T. and the children in a therapeutic setting, she cannot say how well M.T. could care for the children if she were unsupervised.

Although M.T. testified she lives alone, Sandoval testified that when she visited M.T.'s home, M.T. was living with a teenage relative of the children's father, V.R., and the bedroom that was to have been for M.T.'s six, four, and two-year-old children was set up for a teenager. Sandoval added that the presence of V.R.'s relative in M.T.'s home was concerning because M.T. had repeatedly been cautioned to stay away from V.R. and his family. Pfeifer testified that she,

like Sandoval, has advised M.T. to stay away from V.R. Additionally, while M.T. testified she has two part-time jobs that are sufficient to pay her bills, Sandoval testified that she did not learn about those jobs until the day of trial and that M.T. had previously maintained that her boyfriend was paying her household bills. Sandoval testified M.T. is financially unstable, stating, "I can't trust that she really is working, because she tells me that she's not and then that she is."

Additionally, the Department presented evidence that when the children went to live with their current foster family, V.R., Jr. stole food, ate out of trash cans, was abusive to his sister, tried to cut other children at school with plastic knives, and stabbed other children with forks. Both V.R., Jr. and C.R. were afraid to go to sleep at night and hoarded and hid food. They also told their foster mother about "getting hit in the face" and "thrown around the house" when they lived with their natural parents. *See* TEX. FAM. CODE § 263.307(7) (trial court may consider history of abusive or assaultive conduct by child's family or others who have access to child's home). The Department also presented evidence that all three children had untreated warts when they arrived in their foster home, and the warts on C.R.'s toes had grown over so that her toes were stuck together. *See In re R.R.*, No. 01-10-01069-CV, 2011 WL 5026229, at *10 (Tex. App.—Houston [1st Dist.] Oct. 20, 2011, pet. denied) (mem. op.) (evidence of protracted delay in seeking medical treatment supported termination of parental rights). In their foster home, the children received medical treatment for their warts, as well as therapy and medication for their behavioral issues. Sandoval testified she was concerned about M.T.'s ability to meet the children's needs because M.T. "goes back and forth" on whether she believes the children have behavioral issues.

Furthermore, the Department also presented evidence that the children experience setbacks in their behavior after they visit M.T. Staples, the school counselor for V.R., Jr. and C.R., testified the children "didn't want to go to the visits" with M.T. *See In re D.M.D.*, 363 S.W.3d 916, 926 (Tex. App.—Houston [14th Dist.] 2012, no pet.). She reported that on the days after the children

visited M.T., V.R., Jr. "would be very sad, very irritable, very angry" and would "spen[d] the whole day with [Staples] in [her] office, because he couldn't seem to kind of get it together." Staples also testified that C.R. "would cuss, scream, kick and have to be removed from the classrooms" on the days after she visited M.T. Similarly, the children's foster mother testified that "most of the time," C.R. says she does not want to see M.T., and the children "are not the same" and engage in "lots of fighting, hitting each other" when they return from visits with M.T. *See id.* (noting in best interest analysis that "the children's behavior worsened" when they resumed visits with parent). Sandoval corroborated these reports, testifying the children "just shut down completely" after their visits with M.T. and that "even within the visits, the kids' behaviors change." Sandoval also testified that C.R. has told her "crying and screaming" that she does not want to see M.T.

Finally, as noted above, it is undisputed that M.T. was arrested three times during this case. *See In re E.D.*, 419 S.W.3d at 620 (court may consider parent's past conduct in making best interest determination). At the time of trial, she was required to wear a GPS ankle monitor. M.T. testified she was required to wear the ankle monitor because she had admitted to driving a car without automobile insurance. Sandoval testified, however, that M.T. was required to wear the ankle monitor because of multiple incidents "of noncompliance with the Esperanza Court," including an incident where she "was dishonest with the Court" about why she could not attend a required appearance. *See id.* Sandoval testified M.T.'s difficulty in following the rules of the Esperanza Court gave her concern about returning the children to M.T. because "if she can't follow simple rules for herself, how is she going to follow the rules for these children that need a lot of help and a lot of time and dedication with their behavioral issues." *See id.* Sandoval added, "[M.T.] does not tell me that she's not going back to jail or that she's planning to stay away from jail. She just has a plan as to when she does go back to jail who can take care of the children." *See In re J.G.S.,*

550 S.W.3d 698, 705 (Tex. App.—El Paso 2018, no pet.) ("The need for permanence is a paramount consideration for a child's present and future physical and emotional needs."). Sandoval also testified that M.T. "denied responsibility for her part in the CPS case," minimized the reasons why she was found to have violated her probation, and "always has a reason why it's somebody else's fault and not hers." *See In re J.M.*, No. 04-00-00607-CV, 2001 WL 649612, at *1 (Tex. App.—San Antonio June 13, 2001, no pet.) (mem. op.) (considering parent's refusal to accept responsibility for children's removal during best interest analysis). Sandoval testified that as a result, she did not believe M.T. had learned from or satisfied the goals of the services she had completed.

This court has recognized that "the best interest standard does not permit termination [of parental rights] merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.). Here, though, the evidence described above would have allowed the trial court to form a firm belief or conviction that termination of M.T.'s parental rights was in the best interests of the children. *See In re J.F.C.*, 96 S.W.3d at 266; *In re S.L.M.*, 513 S.W.3d at 750. We therefore overrule M.T.'s arguments to the contrary and hold that legally and factually sufficient evidence supports the trial court's finding, by clear and convincing evidence, that termination of M.T.'s parental rights was in the best interests of the children. *See In re S.L.M.*, 513 S.W.3d at 750.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice